**SCHNITZLER v. YELLOWLEY, Acting Federal Prohibition Director for State of New York, et al.**

(District Court, E. D. New York. May 16, 1923.)

**1. Intoxicating liquors ⊜108(2)—Revocation of permit.**

A permittee, who appears in answer to a citation issued under National Prohibition Act, tit. 2, § 9, to show cause why his permit should not be revoked, and without objection proceeds with the hearing, cannot object later to its regularity.

**2. Intoxicating liquors ⊜108(10)—Revocation of permit; review.**

On review by a court of equity of the action of the Commissioner in revoking a permit, as provided for in National Prohibition Act, tit. 2, § 9, the case is heard de novo, and new evidence may be introduced.

**3. Intoxicating liquors ⊜106(1)—Regulations respecting revocation of permits held valid.**

Regulations promulgated under National Prohibition Act, tit. 2, § 1 (7), which authorize the Commissioner to make permits "in whole or in part," held within the power granted, reasonable, and valid.

**4. Intoxicating liquors ⊜106(2)—Grounds for revocation of permit.**

It is the duty of one to whom a permit is granted under National Prohibition Act, tit. 2, to see that it is not used for violation of the act, and a failure to do so will warrant a revocation of the permit, under the provision of section 9 authorizing such revocation if the permittee "has not in good faith conformed to the provisions of this act."

**5. Intoxicating liquors ⊜15—Delegation of power to Commissioner to issue and revoke permits held within the power of Congress and valid.**

The provisions of National Prohibition Act, tit. 2, conferring power of the Commissioner of Internal Revenue to issue permits for the manufacture or sale of liquor, and to revoke the same, and necessarily vesting him with a discretion in the matter, subject to judicial review, held within the police power of Congress as granted by section 2 of the Eighteenth Amendment, and valid.

In Equity. Suit by Dorothea Schnitzler against Edward C. Yellowley, Acting Federal Prohibition Director for the State of New York, and Roy A. Haynes, Federal Prohibition Commissioner for the United States. Decree for defendants.

See also, 288 Fed. 84.

Meyer Kraushaar, of New York City (Emanuel Celler, of New York City, of counsel), for plaintiff.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y., and Guy O. Walser, Asst. U. S. Atty., of New York City, for defendants.

CAMPBELL, District Judge. This is an action in equity, brought by the plaintiff to review the action of the defendants in revoking in part the permit theretofore granted to the plaintiff. The plaintiff was a retail druggist, to whom a retail basic permit had been issued by the prohibition department. In November, 1922, a citation was issued by the prohibition department requiring her to show cause why her permit should not be revoked for the reasons set forth in said citation, as follows:

"You are not in good faith conforming to the provisions of the National Prohibition Act and regulations promulgated thereunder, in that you do not

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

keep proper records showing the receipt and disposition of intoxicating liquors as required by said act and regulations."

[1, 2] The plaintiff proceeded with the hearing before the person designated by the Commissioner without objection, and cannot now be heard to object to the regularity of said hearing. People v. Bogart, 122 App. Div. 872, 107 N. Y. Supp. 831; Farley v. Wurz, 217 N. Y. 105, 111 N. E. 479. And in any event that would be of no moment, as this is a trial de novo, and not merely a review of the Commissioner's decision, where no testimony can be received, other than the record of the hearing before the Commissioner. O'Sullivan v. Potter (D. C.) 290 Fed. 844, January 2, 1923, opinion of Judge Anderson.

The plaintiff contented herself with offering the record of the hearing before the Commissioner as her only evidence. The decision of the agent who heard the testimony in his report, which is sustained by the evidence offered before him, recommended revocation on the ground that the permittee's record showed a shortage of 59½ gallons of whisky and 214 gallons of wine, and then read as follows:

"In the matter of whisky, permittee accounts for part of this shortage by producing 78 prescriptions more ·than the agents counted, and states that some of these had not been entered in the book when they called, and she did not complete this book every day, but when she had time, as testified to on page 5. On page 4 of the testimony, permittee stated she had a robbery, but does not state the amount stolen, and the shortage appears on this page to be 34 gallons. According to the agents' report, 11 gallons whisky were stolen, making the shortage 45 gallons. Permittee states that the clerks were drinking her whisky and having friends come in after the store was closed, apparently consuming some of the liquor. The dishonest clerk, according to the testimony on page 6, was with the permittee 15 months, and she had been told once or twice by people who watched the store that he had been disposing of her whisky as above stated.

"In the matter of wine, permittee is not sure how much she has on hand at this time, stating it to be 10 or 15 gallons. She said the agents did not examine the wine book, and testified to the effect that she made a great deal of beef, iron and wine, and sold about a gallon a day. It is apparent that the permittee has given little attention to her business, and her figures, especially in regard to wine, appear to be mainly guesswork. She has withdrawn a large amount of whisky, and her shortage at the lowest estimate is over 10 per cent. of the amount withdrawn. Her prescriptions are nearly all regular, but under all the circumstances of the case I am of the opinion that, while actual bad faith may not be shown, permittee should not be intrusted with a permit for the withdrawal of wine and whisky, and I accordingly recommend that the permit be revoked to the extent that no further withdrawals of said intoxicants be made and her future withdrawals be limited to 25 gallons of alcohol per quarter, which should be ample for her needs.

"I am making these recommendations after a consultation with Acting Director Yellowley. This being a case of failure to keep records, I am of the opinion that the statutory fines and penalties should not be assessed against the permittee, and an action should not be commenced for the forfeiture of her bond."

The Commissioner made an order in this matter, the important part of which reads as follows:

"Ordered, that permit No. N. Y.—I–3649, issued to Dorothea Schnitzler, be, and the same hereby is, revoked and canceled upon the following grounds, to wit: That permittee has failed to keep proper records of the receipt and disposition of such intoxicants. Proceedings dismissed as to alcohol."

On the trial the defendants called the plaintiff as a witness, and she testified that there had been a shortage of whisky in her store, due to the fact that one of her clerks drank up or sold a quantity of whisky; that he had been seen drunk, that the matter had been reported to her, and that she had spoken to the clerk, and had kept him in her employ for about two or three months after she first heard the report. She heard that the clerk brought men in after hours and they drank the liquor. The plaintiff admitted a shortage of whisky and wine. The plaintiff also claimed that about 11 gallons of the whisky shortage was due to the fact that there was a robbery, but the two men who were arrested were dismissed by the grand jury.

We thus have a situation where there was a considerable shortage for which the plaintiff was responsible, because the permit was issued to her, and she owed the duty under that permit to see that none of the liquor she was permitted to sell should be dispensed for beverage purposes, and she cannot now escape responsibility by charging the shortage to her clerk, because she was responsible for him, and should have seen to it that he did not make away with it. Suss v. Farley, 164 App. Div. 161, 149 N. Y. Supp. 661. We thus have a clear case, which would have justified the Commissioner in entirely revoking plaintiff's permit, but, instead of so doing, considering the necessity of alcohol for the drug business, he revoked her permit in part, by withdrawing the right to purchase and sell whisky and wine, and reducing the amount of alcohol she might purchase to 25 gallons per quarter.

[3] The plaintiff objects to the action of the defendants on the alleged grounds: (1) That the regulations promulgated by the Commissioner were not in accord with the statute, but in excess of the power given; (2) that the regulations were unreasonable and arbitrary; (3) that no discretion could lawfully be vested in the defendants to deny or refuse a permit.

So much of the National Prohibition Law (41 Stat. 305) as is necessary for consideration in the instant case reads as follows:

"Title II.

"Section 1. When used in title II and title III of this act (1) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine. * * *

"(7) The term 'regulation' shall mean any regulation prescribed by the Commissioner with the approval of the Secretary of the Treasury for carrying out the provisions of this act, and the Commissioner is authorized to make such regulations. * * *

"Sec. 3. No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. * * *

"Sec. 6. No one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the Commissioner so to do, * * *

"All permits to manufacture, prescribe, sell, or transport liquor, may be issued for one year, and shall expire on the 31st day of December next succeeding the issuance thereof: * * * Provided further, that * * * permits to purchase liquor shall specify the quantity and kind to be purchased and the purpose for which it is to be used. No permit shall be issued to any

person who within one year prior to the application therefor or issuance thereof shall have violated the terms of any permit issued under this title or any law of the United States or of any state regulating traffic in liquor. * * *

"Every permit shall be in writing, dated when issued, and signed by the Commissioner or his authorized agent. It shall give the name and address of the person to whom it is issued and shall designate and limit the acts that are permitted and the time when and place where such acts may be performed. * * * In the event of the refusal by the Commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity in the manner provided in section 5 hereof. * * *

"Sec. 9. If at any time there shall be filed with the Commissioner a complaint under oath setting forth facts showing, or if the Commissioner has reason to believe, that any person who has a permit is not in good faith conforming to the provisions of this act, or has violated the laws of any state relating to intoxicating liquor, the Commissioner or his agent shall immediately issue an order citing such person to appear before him on a day named not more than thirty and not less than fifteen days from the date of service upon such permittee of a copy of the citation, which citation shall be accompanied by a copy of such complaint, or in the event that the proceedings be initiated by the Commissioner with a statement of the facts constituting the violation charged, at which time a hearing shall be had unless continued for cause. Such hearings shall be held within the judicial district and within fifty miles of the place where the offense is alleged to have occurred, unless the parties agree on another place. If it be found that such person has been guilty of willfully violating any such laws, as charged, or has not in good faith conformed to the provisions of this act, such permit shall be revoked, and no permit shall be granted to such person within one year thereafter. Should the permit be revoked by the Commissioner, the permittee may have a review of his decision before a court of equity in the manner provided in section 5 hereof. During the pendency of such action such permit shall be temporarily revoked."

The Commissioner did prescribe regulations, and Regulation 60, article III, section 15, reads as follows:

"Sec. 15. Every permit will clearly and specifically designate and limit the acts that are permitted and the time when and the place where such acts may be permitted. No permit shall be issued to any person who within one year prior to the application shall have violated the terms of any permit issued under these regulations, or any law of the United States, or of any state regulating the traffic in intoxicating liquor. All permits issued hereunder are nontransferable. Any such permit may be revoked in whole or in part by the Commissioner at any time, if it appears after proper hearing that the terms thereof have not been complied with. In the event of refusal by the Commissioner to grant or renew a permit, or if any permit is revoked the applicant or permittee may have the action of the Commissioner reviewed by appropriate proceedings in a court of equity."

We thus see that the law provided for permits limiting the acts permitted, and the time when and the place where such acts might be performed, and it also provided that the Commissioner, for cause therein provided, might revoke the permit. Therefore the complaint of the plaintiff that the regulations promulgated by the Commissioner were not in accord with the statute, but in excess of the power given, seems to be directed only to the fact that the Commissioner, instead of entirely revoking the plaintiff's permit, revoked it as to whisky and wine, and limited it as to alcohol.

This complaint seems to be unreasonable, because by statute the Commissioner had the right, on granting the permit, to limit the acts

of the permittee, and for cause to revoke the permit, and therefore the greater would include the lesser, and, instead of revoking, he could, if he saw fit, limit the acts allowed under the permit. The first objection of the plaintiff, therefore, seems to be without merit.

[4] The second ground of objection alleged by the plaintiff is that the regulations were unreasonable and arbitrary, but nothing in the regulations that answers that description is pointed out, and it seems to be the action of the Commissioner in restricting the permittee instead of dismissing the proceedings to which objection is made. The plaintiff makes a point of the statement in the opinion of the agent who presided at the hearing where he says, "I am of the opinion that, while actual bad faith may not be shown," and contends that on that statement the plaintiff was entitled to a dismissal.

This position does not seem to me to be well taken, because it was not charged that the plaintiff in bad faith did any acts in violation of the permit; but it was charged that the plaintiff did not in good faith do all that she should have done to see that the permit granted to her was not abused. See so much of section 9 of the National Prohibition Law as reads as follows: " * *. * Or has not in good faith conformed to the provisions of this act. * * * "

It was the omission to act, not the commission of acts, with which the plaintiff was charged. She had no right after receiving the permit, to allow the conditions to prevail which are shown by her own testimony, and, if such conditions were allowed to prevail, then the only way by which enforcement of the law could be compelled, would be to deprive her of the opportunity of violating the law, and, instead of the action of the Commissioner being arbitrary, it was the only course open to him under the conditions, the existence of which were admitted by the plaintiff.

In our consideration of this question we must not lose sight of the purpose of the law, which is expressed in section 3, where it says:

" * * * And all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented."

Surely no one can contend that permittee's inaction for two or three months after notice that her clerk was having men in the store after hours, drinking the whisky which she had obtained under her permit, was an evidence of good faith on her part; on the contrary, while she may not personally have participated in any way in the actual sale or consumption of the liquor, she did not in good faith do all that she could, as she was bound to do, to see that the liquor thus obtained by her was not used as a beverage.

[5] The third objection raised by the plaintiff is that no discretion could lawfully be vested in the defendants to deny or refuse a permit. This objection strikes at the root of the matter, because the law itself, as it must have done to make it workable, grants to the Commissioner the right to exercise what might be termed judicial discretion, subject to review by the courts.

To sustain plaintiff's contention would in fact be to determine that the law in this respect was unconstitutional, and no such determination could possibly be justified in the instant case. The plaintiff makes a

point, which seems to be well taken, that before the enactment of the Eighteenth Amendment to the Constitution of the United States the Congress had no police power. So much of the Eighteenth Amendment to the Constitution as is necessary for consideration in the instant case reads as follows:

"Article XVIII.

"1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

By this amendment police power to enforce the amendment was granted to the Congress. Police power having been granted to the Congress to enforce the ·amendment, the cases cited by the .plaintiff are not binding, and we should consider what has been the almost uniform holding of the state courts as to state statutes regulating the subject of intoxicating liquors.

In most jurisdictions the doctrine was well settled that the court or board charged with the duty of issuing licenses was invested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to the granting or refusing of the license applied for, and this was the law in this state for many years, until the system was changed by enactment of the so-called Raines Law (Laws N. Y. 1896, c. 112). People v. Mills, 91 Hun, 144, 36 N. Y. Supp. 371; People v. Dalton, 7 .Misc. Rep. 558, 28 N. Y. Supp. 491; People v. Hilliard, 28 App. Div. 140, 50 N. Y. Supp. 909; People v. Murray (N. Y. Super. Ct.) 38 N. Y. Supp. 177; People v. Brooklyn Board of Excise (City Ct.) 16 N. Y. Supp. 798.

There is no difference in effect between the license formerly issued and the permit to be granted by the Commissioner. To say that the law did not contemplate the exercise of any discretion by the Commissioner is to disregard its very language, as we have before quoted the same, and to say that the exercise of discretion therein granted to the Commissioner cannot be sustained as a proper exercise of the police power granted to the Congress by the amendment is to render impossible of enforcement the amendment itself. If anybody in the retail drug business, who applies without regard to the volume of business they had been transacting, or the apparent necessities of the location of their business, is to have the right of unlimited withdrawals of liquor, there could not be even a reasonable effort made to enforce the law.

The discretion granted cannot be an arbitrary discretion, but must be a judicial discretion, to be exercised in conformity to regulations promulgated by the proper authority and subject to judicial review. This is exactly the situation in the matter at bar, and, the Commissioner having had authority on the granting of the permit to limit the acts of the permittee, he had the same power when the permittee had shown that she had not in good faith performed her obligations under the permit.

It is true that the amendment is directed against the manufacture, sale, and transportation of intoxicating liquor for beverage purposes only, but no citation seems to be needed to show the right of the Congress to pass any law imposing conditions and limiting the manufacture, sale, or transportation of intoxicating liquor for other purposes, and reserving to certain classes of the citizenry who are properly qualified the privilege of dealing in the same, and of creating some authority to determine in the first instance who possess the necessary qualifications, such determination being subject to judicial review. The appropriateness of the legislation to be enacted to enforce the Eighteenth Amendment is for the Congress to select, and such legislation cannot be held invalid, unless it has no substantial relation to the enforcement of the amendment. Massey v. U. S. (C. C. A.) 281 Fed. 293.

This act is constitutional, the Commissioner was vested with a judicial discretion, and his exercise thereof was not arbitrary, but it was in full accord with and justified by the facts. The plaintiff has not shown herself to be entitled to equitable relief. The plaintiff's motions for judgment are denied. The defendants' motion for judgment is granted on the merits.

Judgment is therefore granted to the defendants against the plaintiff, dismissing the plaintiff's bill of complaint on the merits, with costs.