**SENGER DRUG CO. v. MELLON, Secretary of the Treasury, et al.**

District Court, E. D. Illinois. August 3, 1927.

1. Intoxicating liquors ⊜108(10)—Review of Commissioner's decision revoking permit is not by trial de novo, but is limited to determination of errors of law, and whether evidence supports order (National Prohibition Act, tit. 2, §§ 5, 9 [Comp. St. §§ 10138½bb, 10138½dd]).

On review by a court of equity under National Prohibition Act, tit, 2, §§ 5, 9 (Comp. St. §§ 10138½bb, 10138½dd), of decision of Commissioner revoking permit, there is not a hearing de novo, but the authority of the court is limited to determining whether, on the facts and law, the action of the Commissioner was based on an error of law, or is wholly unsupported by the evidence, or clearly arbitrary or capricious.

2. Intoxicating liquors ⊜108(5)—Order revoking druggist's permit held not sustained by evidence (National Prohibition Act, tit. 2, § 9 [Comp. St. § 10138½dd]).

Order revoking druggist's permit to dispense liquor *held* not supported by any evidence showing that the permittee had not in good faith conformed to the provisions of the National Prohibition Act (Comp. St. § 10138¼ et seq.), or had violated the laws of any state, which are the only two grounds for revocation under title 2, § 9, of the act (Comp. St. § 10138½dd).

3. Intoxicating liquors ⊜155(1)—Filling prescription for nonresident, whose state prohibits medicinal liquor, is not unlawful.

Filling by druggist permittee in Illinois of prescription for medical liquor issued by licensed physician is not unlawful because purchaser lives in another state, which prohibits medicinal liquor.

In Equity. Suit by the Senger Drug Company against Andrew W. Mellon, Secretary of the Treasury of the United States, and others. Decree for complainant.

Joseph H. Barnhart, of Chicago, Ill., and Walter J. Grant, of Danville, Ill., for complainant.

Harold G. Baker, of East St. Louis, Ill., John W. Speakman, of Danville, Ill., and Walter E. Wiles, of Chicago, Ill., for defendants.

LINDLEY, District Judge. The plaintiff, engaged in the retail drug business in Danville, Ill., holder of permit to use and dispense intoxicating liquor since 1919, has filed its bill in equity, praying that the court may vacate and set aside an order revoking said permit, entered by the Prohibition Administrator on March 18, 1927, upon evidence duly heard. The cause is submitted upon the record then made. In his opinion the representative of the Treasury Department found that the permittee had failed to make true reports of its activities in the use of wine, that its reports showed many discrepancies, that it carried a false record as to the quantity of whisky, and that it filled prescriptions for whisky for patients living in the state of Indiana. The defendants in their answer deny there should be any vacation of the order.

[1] At the outset it is necessary to determine the extent of the jurisdiction of the court. Section 9 of title 2 of the Prohibition Act (Comp. St. § 10138½dd) provides that, if the Commissioner shall have reason to believe that the permittee "is not in good faith conforming to the provisions of this act, or has violated the laws of any state relating to intoxicating liquor," a hearing shall be had to determine whether the permit shall be canceled, and that, "if it be found that such person has been guilty of willfully violating any such laws, as charged, or has not in good faith conformed to the provisions of this Act, such permit shall be revoked." The permittee has a right to a "review of the decision before a court of equity in the manner provided in section 5." Section 5 of title 2 (Comp. St. § 10138½bb) defines the review as an "appropriate proceeding in a court of equity," wherein "the court may affirm, modify, or re-

verse the finding of the Commissioner as the facts and law of the case may warrant."

The jurisdiction of the court upon reviews of refusals to issue permits is finally determined by the Supreme Court in the case of Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, wherein the court said: "It is clear that Congress, in providing that an adverse decision of the Commissioner might be reviewed in a court of equity, did not undertake to vest in the court the administrative function of determining whether or not the permit should be granted; but that this provision is to be construed, in the light of the well-established rule in analogous cases, as merely giving the court authority to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious."

Inasmuch as the act provides that the same method of review shall be followed in revocation of permits as in issuance of same, it is apparent that the contention of the plaintiff that the proceeding is a trial de novo, wherein all questions of fact and law are to be re-examined, is not well founded. The cases cited in support of said proposition, such as O'Sullivan v. Potter (D. C.) 290 F. 844, Goldberg v. Yellowley (D. C.) 290 F. 389, Schnitzler v. Yellowley (D. C.) 290 F. 849, and other cases cited by the plaintiff, cannot be reconciled with the Supreme Court's decision quoted.

[2] However, upon examination of the record, the court is of the opinion that the Prohibition Administrator erred in matters of law and entered findings to support which there is no evidence. Under section 9 there are only two causes for revocation of a permit, one the failure to conform in good faith to the provisions of the Prohibition Act, and the other a willful violation of any state law relating to intoxicating liquors. There appear to have been some minor discrepancies in making and keeping the records of the permittee, but these discrepancies were not various in character; they were mere repetitions of the same error. Their repetition, and the testimony regarding the same, are consistent only with the best of good faith in the permittee in attempting to comply with the provisions of the Volstead Act and the regulations of the Treasury Department. In fact, the ultimate result as to the wine records is that there is no discrepancy whatsoever; while that as to the whisky records is that there is a discrepancy of less than one-third of 1 per cent., which, taking into consideration the quantity handled, the actions of the parties, their conduct from day to day and month to month, can be classified only as an error in bookkeeping, and of immaterial moment, indicating in no wise lack of good faith.

Nor is there any evidence that the permittee has violated any state laws with regard to intoxicating liquor. True, the permittee has issued a number of prescriptions to persons whose addresses were stated as being within the state of Indiana, where it seems the law does not permit the sale of medicinal whisky. These prescriptions were issued by regularly authorized physicians in Illinois upon blanks, and in the manner, prescribed by the Treasury Department; they were regular in form and in substance. There is no evidence that these were other than bona fide prescriptions, issued in the regular course of physicians' practice, in strict accordance with the Volstead Act. It can be no violation of the law of Indiana to fill, in Illinois, a prescription for medicinal liquor to a man, regularly prescribed for, merely because he lives in Indiana at the time the prescription is filled.

[3] This record is consistent only with good faith upon the part of the permittee. It discloses the revocation of a permit for reasons not well founded in law, but based solely upon the mistaken theory of the Prohibition Administrator that druggists in Illinois may not rightfully fill a prescription for medicinal liquor issued by a regularly licensed Illinois physician to a man living in Indiana. Consequently, the order cannot be sustained.

The court does not attempt to pass upon a case where there is proof of a conspiracy among druggists, physicians, and prescription holders to violate the Indiana law or the Volstead Act, as there is no such proof before the court. If such situation shall arise, it may be met by proper action upon the part of the Treasury Department and the United States attorney.

There will be a decree directing the vacation of the order of revocation, as prayed.