V. Casazza & Bro., V. Casazza & Bros. *v.* United States (No. 4062)[1]

---

[1] T. D. 49292.

United States Court of Customs and Patent Appeals, November 22, 1937

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellants.

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *William Whynman*, special attorneys, of counsel), for the United States.

[Oral argument October 4, 1937, by Mr. Klingaman and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges [1]

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the importers from a judgment of the United States Customs Court, Third Division, which overruled their protests which claimed that certain whisky was assessed for duty at too high a rate because it was not taxed under the proper tariff act.

The merchandise involved consisted of whisky brought into this country in October and November 1921, during the life of the tariff act of 1913. The whisky was seized by the Government and was not

[1] Graham, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.

released to the importers until after the passage of the Tariff Act of 1930, under which it was assessed for duty. The importers claim that the whisky was lawfully imported, that the action of the Government in seizing the same was improper, and that it should be held dutiable at the rate provided for in the tariff act of 1913—the act in force at the time the whisky was brought into this country.

The appellants had been for many years importers of food products and alcoholic liquors. In 1920 they were in possession of a Federal permit to deal in wines. On June 18, 1920, application was made for a permit "To import distilled spirits and wines for nonbeverage purposes in accordance with regulations to date and all subsequent regulations," which application, together with the permit issued by the Prohibition Commissioner, and a letter from the Federal Prohibition Director, were introduced in evidence as Collective Exhibit 1. The pertinent portions of the permit issued follow:

Application having been duly presented and approved, you are hereby authorized and permitted to Import and sell *wines* for other than beverage purposes, to wit: Import in accordance with the provisions of Sec. 79, Art. 14, Reg. 60. [Italics ours.]

Sell to others holding permits which confer authority to purchase and use intoxicating liquor for nonbeverage purposes.

\*     \*     \*     \*     \*     \*     \*

*This permit is effective from the date hereof, and will remain in force until* December 31, 1920, unless revoked or renewed as provided by law or regulations.

At the bottom of the application is a check mark indicating that the application was recommended for approval by the Federal Prohibition Director for New York.

The pertinent portions of the letter from the Federal Prohibition Director to the importers read:

Enclosed find approved application and permit to *use distilled spirits for other than beverage purposes.*

*You will confine yourself to the specific conditions as set forth in your permit.* [Italics ours.]

On September 29, 1920, an application for extension of the permit was made. No action was taken on this application until December 24, 1921, when it was denied, but under the regulations such an application extended the prior permit until such time as the prohibition authorities acted thereon. The shipments involved in the instant case were made during this period.

During the time when the permit in controversy was in force, distilled spirits were purchased from the importers by other dealers as evidenced by Government permits introduced in evidence as Exhibits 2 and 3.

Under the facts above stated, the sole point in issue is: Was the merchandise imported under a valid permit? If not, the judgment of the United States Customs Court must be affirmed.

It is the importers' contention that they were properly authorized to deal in whisky at the time of the importations in question and that the collector's action in seizing the liquor and denying access thereto did not divest them of the right to pay duty in accordance with the law in force at the time of the arrival of the merchandise in this country.

The importers lay much stress on the contention that the "piece of paper entitled 'permit' and which is mere evidence of what had theretofore taken place, clearly is not in accord with the action of the prohibition officers and does not truly show the extent of the authority of the importers to deal in intoxicating liquor," and cite, among others, the case of *Moore* v. *St. Paul*, 61 Minn. 427, 429, which held that the document commonly called a license is but the evidence of the license for permission to carry on a particular business and is not essential to the existence of the authority itself.

The law governing the issuance of permits like the one involved here is found in title 27 of the United States Code. In §4 of said title, the term "permit" is defined:

§4. DEFINITIONS. When used in this title * * *
\* \* \* \* \* \* \*
(5) The term "permit" shall mean a formal written authorization by the commissioner setting forth specifically therein the things that are authorized.

As we understand appellants' very earnest contention, they seek to invoke a principle which has long been well settled that where the issuance of a license or permit is merely a ministerial duty, the law will presume the same to be in existence, if the party seeking the license or permit has done all that is required of him and if the parties have acted as if the license or permit had been issued even though in fact no permit or license has been executed or an erroneous one delivered.

The issuance of the permit under the law here involved was not a mere ministerial duty. On the contrary, the Federal Prohibition Commissioner, in issuing the permit, exercised what may be termed a judicial discretion which was subject, however, to review by the courts. The case of *Schnitzler* v. *Yellowley et al.*, 290 Fed. 849 (not cited by either party), was concerned with the particular permit section of the National Prohibition Act here under consideration. The permit of Schnitzler, a retail druggist, had been in part revoked. She brought an action in equity for a review of the action of the acting Federal Prohibition Director of the State of New York and of the Federal Prohibition Commissioner for the United States, and contended that there was no discretion in the commissioner to deny or refuse a permit and that he could not arbitrarily revoke the same. The court in discussing the question said:

The third objection raised by the plaintiff is that no discretion could lawfully be vested in the defendants to deny or refuse a permit. This objection strikes

at the root of the matter, because the law itself, as it must have done to make it workable, grants to the Commissioner the right to exercise what might be termed judicial discretion, subject to review by the courts.

To sustain plaintiff's contention would in fact be to determine that the law in this respect was unconstitutional, and no such determination could possibly be justified in the instant case. The plaintiff makes a point which seems to be well taken, that before the enactment of the Eighteenth Amendment to the Constitution of the United States the Congress had no police power. * * *

    *        *        *        *        *        *        *

By this amendment police power to enforce the amendment was granted to the Congress. Police power having been granted to the Congress to enforce the amendment, the cases cited by the plaintiff are not binding, and we should consider what has been the almost uniform holding of the state courts as to state statutes regulating the subject of intoxicating liquors.

In most jurisdictions the doctrine was well settled that the court or board charged with the duty of issuing licenses was invested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to the granting or refusing of the license applied for, and this was the law in this state for many years, until the system was changed by enactment of the so-called Raines law (Laws N. Y. 1896, c. 112). [Citing authorities.]

There is no difference in effect between the license formerly issued and the permit to be granted by the Commissioner. To say that the law did not contemplate the exercise of any discretion by the Commissioner is to disregard its very language, as we have before quoted the same, and to say that the exercise of discretion therein granted to the Commissioner cannot be sustained as a proper exercise of the police power granted to the Congress by the amendment is to render impossible of enforcement the amendment itself. If anybody in the retail drug business, who applies without regard to the volume of business they had been transacting, or the apparent necessities of the location of their business, is to have the right of unlimited withdrawals of liquor, there could not be even a reasonable effort made to enforce the law.

The discretion granted cannot be an arbitrary discretion, but must be a judicial discretion, to be exercised in conformity to regulations promulgated by the proper authority and subject to judicial review. This is exactly the situation in the matter at bar, and, the Commissioner having had authority on the granting of the permit to limit the acts of the permittee, he had the same power when the permittee had shown that she had not in good faith performed her obligations under the permit.

When appellants imported the liquor involved in this controversy, they were acting under a permit which entitled them to import wine only. It is our opinion that they did not have, either actually or constructively, a permit authorizing them to import distilled spirits so as to make their importations lawful. The statute definitely provided that the permit had to be a "formal, written authorization * * * setting forth specifically therein the things that are authorized." The importers were presumed to know the law and they cannot now successfully contend that they were authorized in law to import the distilled spirits involved when their "formal, written authorization" only specified that the permittees might import and sell wine.

Since bringing the distilled spirits under consideration into this country during the life of the tariff act of 1913 was not authorized by law, and since they were seized by the Government and held until the Tariff Act of 1930 became effective, they cannot be regarded as being imported under the provisions of the tariff act of 1913 so as to make them subject to the duty provisions of that act. It follows that the merchandise was dutiable under the Tariff Act of 1930 when the same left customs custody and entered the commerce of this country. As we see it, this result is made mandatory by the provisions of section 315 of the Tariff Act of 1930 which reads in part as follows:

SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof: * * *

The United States Customs Court having arrived at the correct conclusion, its judgment is *affirmed*.

LENROOT, Judge, concurs in the conclusion.