**FRED FEIL BREWING CO. v. BLAIR,**
Com'r of Internal Revenue, et al.

(District Court, E. D. Pennsylvania. December 23, 1924.)

No. 3197.

1. **Intoxicating liquors** ⊕⇒69—**Prohibition commissioner's discretion to refuse permits to manufacture nonintoxicating liquor not absolute.**

Under National Prohibition Act, tit. 2, § 37 (Comp. St. Ann. Supp. 1923, § 10138½x), all manufacturers of nonintoxicating beverages therein described are equally entitled to permits, if they come within the description of such section, and the Commissioner has no authority, under title 2, §§ 5, 6 (Comp. St. Ann. Supp. 1923, §§ 10138½bb, 10138½c), to refuse a permit except in exercise of judicial discretion based on legal ground, as distinguished from absolute discretion based on personal judgment.

2. **Intoxicating liquors** ⊕⇒70, 108(9)—**Prohibition commissioner cannot deny or revoke permit without giving applicant hearing.**

Though prohibition commissioner may refuse permit to manufacture nonintoxicating beverages upon evidence of violation of law or fraudulent or unlawful business methods, he cannot revoke a permit or refuse to extend one without a hearing and opportunity to applicant to defend.

In Equity. Suit by the Fred Feil Brewing Company against David H. Blair, Commissioner of Internal Revenue, and others. On plaintiff's motion for preliminary injunction. Motion granted.

Golder & Felger, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., and Francis B. Biddle, Asst. U. S. Atty., both of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. This motion is supported by the verified bill and moving affidavits of the plaintiff, and none of the defendants have filed counter affidavits nor answer. The facts for the purposes of this motion are, therefore, to be taken as those set out in the bill and affidavits.

The plaintiff, a corporation, has been engaged since September, 1906, in the manufacture and sale of malt and cereal beverages of a kind not in violation of the laws of the United States or the state of Pennsylvania. The Federal Prohibition Commissioner on May 23, 1922, issued to the plaintiff a permit authorizing him to operate a de-alcoholizing plant for the production of cereal beverages and to use intoxicating liquors in the operation of the same for nonbeverage purposes. That is a method of producing cereal beverages, such as beer, containing less than one-half of 1 per centum of alcohol, by first producing the beverage containing alcohol in excess of the lawful amount and then reducing it to the lawful content by de-alcoholization. The permit issued would under title 2, § 6, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½c), expire December 31, 1923, unless extended after August 31, 1923, to December 31, 1924.

On August 23, 1923, the plaintiff applied for renewal of its permit so as to extend it to December 31, 1924, which renewal was approved by the Prohibition Director at Philadelphia, but was disallowed by Prohibition Commissioner Haynes. No hearing was accorded the plaintiff, nor was any reason for disapproval given to the plaintiff. On July 30, 1924, upon application of the plaintiff, Commissioner Haynes issued to it a permit for the de-alcoholization and sale of a certain quantity of un-dealcoholized beer and for the sale of a certain quantity of cereal beverage, not to exceed one-half of 1 per centum of alcoholic contents, then in the vats as to the former, and as a finished product on the premises of the plaintiff as to the latter, this to be done under the immediate supervision of two government agents to be stationed on the premises during such operations. This permit, expressly, did not authorize the manufacture of additional cereal beverages of all materials owned by the company, nor give it authority to purchase and use any additional raw materials in the manufacture of cereal beverages, and the plaintiff was required to file a bond to be approved by the Prohibition Director. The permit was for 60 days only, and to expire on September 30, 1924. It was subsequently extended until October 25, and the plaintiff was notified by the Prohibition Commissioner that it would absolutely terminate on that date.

For the purposes of the present motion, it appears that the plaintiff has from the time of the granting of its first permit to the present time in all respects complied with the terms and conditions of the permits and of the law and the regulations, and that no charges have been made against it of any violation of the law or regulations, and it has not at any time been charged with any offense whatever. The plaintiff has a very large sum of money involved in its business, and, if its allegations are true, and we must assume they are, it will suffer irreparable damage by reason of the action of the defendants in refusing to grant it a permit. The bill brings the case before the court for review of the action of the Commissioner as provided in section 5, title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½bb).

This case raises squarely the question whether the Commissioner is vested with absolute discretion to refuse a permit for the manufacture and sale of cereal beverages to a manufacturer engaged in that business without any apparent cause or reason therefor; if he has, the case ends there, and this motion must not only be denied, but the bill should be dismissed. The question is also involved whether, under the power conferred upon the court as a court of equity to review the action of the Commissioner and to affirm, modify, or reverse his finding, the court may by injunctive relief require the Commissioner to issue a permit. It is entirely probable that the Commissioner and the other defendants acting under his authority are as desirous of having the powers of the Commissioner conferred by the Prohibition Act in this respect defined by the courts through construction of the law as the plaintiff is to obtain the relief it prays for.

Section 6 provides: "No one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the Commissioner so to do," with exceptions which are not material to this case. It is apparent, therefore, that the court may not lawfully issue an injunction which would merely restrain the defendants from interfering with the plaintiff in manufacturing and selling cereal beverages in accordance with the methods practiced by it. An injunction to that effect would be unlawful, because it would purport to authorize the plaintiff to manufacture and sell without a permit, which is prohibited by section 6. The inquiry, then, is whether the court, by injunction, may order the Commissioner to issue a permit, pending the final hearing of the case, upon the facts shown by the record.

Section 37 of title 2 of the Act (Comp. St. Ann. Supp. 1923, § 10138½x) provides:

"A manufacturer of any beverage containing less than one-half of 1 per centum of alcohol by volume may, on making application and giving such bond as the Commissioner shall prescribe, be given a permit to develop in the manufacture thereof by the usual methods of fermentation and fortification or otherwise a liquid such as beer, ale, porter, or wine, containing more than one-half of 1 per centum of alcohol by volume, but before any such liquid is withdrawn from the factory or otherwise disposed of the alcoholic contents thereof shall under such rules and regulations as the Commissioner may prescribe be reduced below such one-half of 1 per centum of alcohol."

This section describes the business which has been conducted by the plaintiff and which it desires to continue to conduct under a permit. The apparent purpose of section 37 is to safeguard the public against violation of the law in the sale of intoxicating beer, and at the same time to recognize the lawfulness of a manufacture and sale which Congress did not intend to prohibit in carrying out the purposes of the Eighteenth Amendment. The section provides that such manufacturer may be given a permit.

Returning again to section 6, which prohibits manufacture without a permit and provides the period for which they shall be issued and when they shall expire, the section contains the following proviso:

"Provided, that the Commissioner may without formal application or new bond extend any permit granted under this act or laws now in force after August 31 in any year to December 31 of the succeeding year."

The section further provides:

"In the event of the refusal by the Commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity in the manner provided in section 5 hereof."

The manner provided in section 5 is as follows:

"The manufacturer may by appropriate proceeding in a court of equity have the action of the Commissioner reviewed, and the court may affirm, modify, or reverse the finding of the Commissioner as the facts and law of the case may warrant, and during the pendency of such proceedings may restrain the manufacture, sale, or other disposition of such article."

In view of the language of section 37 providing that the manufacturer "may be given a permit," the contention of the district attorney is that there is thereby no right conferred upon him, but that Congress intended in using the permissive word "may" to give the Commissioner power to grant or refuse permits in his discretion; the only restriction on his discretion being the exercise of some kind of judgment in deciding upon the application. The district attorney takes the extreme position that the Commissioner may base his action upon the question whether, in his judgment, the number of manufacturers of cereal beverages should be increased or diminished. I entirely agree with the district attorney that, if the defendant's position is correct, in that Congress intended to give the Commissioner power in his discretion to grant to one applicant a permit and refuse it to another, where each has been and is conducting his business precisely in the same manner and neither has in any respect violated the law, then the court would have no power to interfere in the exercise of such absolute discretion, and the Commissioner might, without even disclosing his reasons, base it upon the ground that, in his judgment, one brewery should exist but not two, which would result in the destruction of the business of the applicant refused.

To carry this contention to its logical result, the Commissioner would have power to destroy the business of brewing beer of less than one-half of 1 per centum of alcoholic content in toto, for he might well conclude that, because of the opportunities afforded through the permission to make what would otherwise be unlawful beer and then reduce it to lawful beer, the act could be more effectively enforced through depriving every one of the right to make lawful cereal beverages. In this conclusion, his reasoning might be entirely sound, but would he not then be assuming a legislative rather than an administrative function? If Congress intended, with the purpose of rendering prohibition more effective, that any manufacture of beer which contained an excess of alcoholic content in any part of the process should be unlawful, it would have prohibited brewing, which involves such process, altogether. It has enacted no such prohibition, and its purpose, therefore, was apparently not to prohibit but to allow any manufacturer of beverages containing less

2 F.(2d)—56

than one-half of 1 per centum of alcohol by volume to conduct that business, but only under a permit from the Commissioner, in order that the public might be safeguarded against violation of the law through such methods of inspection and reasonable regulations as the Commissioner should adopt under the authority granted to him. If this were not the case, why should Congress empower a court of equity to review the action of the Commissioner and to affirm, modify, or reverse his findings? For if the manufacturer's permit was intended to be, not a matter of right, but a matter of chance, depending upon the arbitrary power of the Commissioner to grant or refuse it, why should he apply to the court to hear and determine a case which had already been determined by one having final authority?

[1, 2] I think we must construe the language of section 37 as conferring a right upon any manufacturer of beverages therein described to be given a permit in such form and subject to such regulations as may be prescribed by the Commissioner and to apply equally to all manufacturers who come within the description of the section. My conclusion, therefore, is that the Commissioner has no authority to refuse a permit unless based upon some lawful ground, and that lawful ground does not include an arbitrary discretion based upon personal judgment, but must be a judicial discretion based upon some legal ground. If the Commissioner has evidence that a manufacturer has violated the law, that he is conducting or has conducted or intends to conduct his business in a fraudulent or otherwise unlawful manner, he may, upon evidence of such fact, refuse a permit, refuse to extend a permit, or revoke a permit; but he may not do so without a hearing at which the applicant has an opportunity to defend himself, nor assume the absolute power of granting a permit to one and refusing it to another, thus destroying what Congress intended to allow to continue as a lawful business.

I find that a permit has been unlawfully refused the plaintiff by the defendants, and it is ordered that a preliminary injunction issue requiring the defendants upon application of the plaintiff to issue to it a permit as provided in the National Prohibition Act pending the final hearing of the cause or the further order of the court.