**McGILL et al. v. MELLON et al.**

(District Court, D. Massachusetts. March 18, 1925.)

No. 2132.

**I. Intoxicating liquors ⚖️108(4)—Government must plead derelictions on which it relies to justify revocation of permit for use of industrial alcohol in proceeding against it to reinstate permit.**

In equitable proceeding against government to reinstate permits for use of alcohol for manufacturing purposes under National Prohibi-

tion Act, tit. 2, §§ 5, 9 (Comp. St. Ann. Supp. 1923, §§ 10138½bb, 10138½dd), the government should plead clearly and specifically the derelictions on which it relies to justify and sustain the revocation, in view of sections 1 (7), 4, 5, 6, 9, 22, 29 (sections 10138½, 10138½b, 10138½bb, 10138½c, 10138½dd, 10138½k, 10138½p).

**2. Intoxicating liquors ⚖️13 — Eighteenth Amendment does not empower Congress to prohibit use of alcohol for industrial purposes.**

Const. Amend. 18, does not empower Congress to prohibit use of alcohol for industrial purposes.

**3. Intoxicating liquors ⚖️72, 108(10) — Scope of review of refusals to grant permits and orders of revocation, stated.**

Review of refusals to grant permits for use of alcohol for manufacturing purposes under National Prohibition Act, tit. 2, § 6 (Comp. St. Ann. Supp. 1923, § 10138½c), or orders of revocation under sections 5, 9 (sections 10138½bb, 10138½dd), by court of equity "as the facts and law of the case may warrant," requires a trial of the case and not a trial of the administrative trial.

**4. Constitutional law ⚖️277(1)—Right to use alcohol for nonbeverage purposes protected by due process.**

The right to use alcohol for nonbeverage purposes is protected by due process of law, and can be taken away only as a penalty for wrongdoing tried and determined as other penalties of law are determined.

**5. Intoxicating liquors ⚖️106(4) — Permit of one who has acted in good faith, but erroneously has failed to conform to act, not subject to revocation.**

Under National Prohibition Act, tit. 2, § 9 (Comp. St. Ann. Supp. 1923, § 10138½dd), providing for revocation of permit to use alcohol for manufacturing purposes where permittee is "not in good faith" conforming to the provisions of the act, or has violated the laws of any state relating to intoxicating liquor, a permit should not be revoked where permittee has acted in good faith but erroneously failed to conform to the act.

**6. Intoxicating liquors ⚖️106(4)—Failure of employees of permittees to comply with instructions as to removal of label from barrels which had contained denatured alcohol held not ground for revocation of permits.**

Failure, not in bad faith, of employees of manufacturers of toilet preparations and perfumes to conform to instructions for removal of labels on barrels which had contained denatured alcohol bought and used by manufacturers in perfumery business, *held* not ground for revocation of manufacturers' permits under National Prohibition Act, tit. 2, § 9 (Comp. St. Ann. Supp. 1923, § 10138½dd).

In Equity. Bill by A. A. McGill and others against Andrew W. Mellon and others. Decree for plaintiffs.

Harold Goldman, of New York City, and Parsons, Wadleigh & Crowley, of Lynn, Mass., for plaintiffs.

Harold P. Williams, U. S. Atty., of Boston, Mass., and Edward R. Hale, Asst. U. S. Atty., of Haverhill, Mass., for defendants.

ANDERSON, Circuit Judge. This is a bill in equity brought under section 9 of title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½dd). The plaintiffs seek a reinstatement of their revoked permits for the use of industrial alcohol in toilet preparations and perfumes.

The case is, in most of its controlling legal aspects, on all fours with O'Sullivan v. Potter, 290 F. 844. The opinion of this court in that case seems to be the only written analysis, so far made by any court, of the applicable statutory provisions. The views expressed in that opinion are adhered to and applied to the facts now at bar.

The bill, as originally filed, utterly failed to conform to the views expressed in that opinion. As amended, it is approximately, but very awkwardly, conformable. Nor was the answer consistent either with the views expressed in that opinion or with any standards of sound pleading. In the O'Sullivan Case, this court held that the judicial review provided in sections 5 and 9 (Comp. St. Ann. Supp. 1923, §§ 10138½bb, 10138½dd) was, "for most practical purposes, a trial de novo"; also, that permittees "invoking judicial revision of an order of revocation, should be prepared, on proper pleadings, to meet in court every charge of violation of state and national law sufficient to disentitle [them] to the relief sought." 290 F. 847.

[1] It follows that to such a bill the government should plead, clearly and specifically, the derelictions on which it relies to justify and sustain the revocation. This it has failed to do.

[2-4] It is important to note that Congress has not undertaken to prohibit the industrial use of alcohol. It is at least doubtful whether Congress would have power to prohibit such use. Certainly there is nothing in the Eighteenth Amendment grounding such power. It is unnecessary to discuss the constitutional question; for the National Prohibition Act shows clearly that Congress had no purpose of attempting to prohibit the use of alcohol in manufacturing perfumes, or otherwise in the industrial arts. Refusals to grant permits (section 6 [Comp. St. Ann. Supp. 1923, § 10138½c]) or orders of revocation (sections 5 and 9 [sections 10138½bb, 10138½dd]) are all reviewable

by a court of equity "as the facts and law of the case may warrant." This means a trial of the case, not a trial of the administrative trial, as in habeas corpus reviews of immigration proceedings. Compare Colyer v. Skeffington (D. C.) 265 F. 17, 23–30, and cases cited. The use of alcohol, for nonbeverage purposes, is a right protected by due process of law. It can be taken away only as a penalty for wrongdoing, tried and determined as other breaches of law are determined.

But it is also clear that regulation of the use of alcohol for industrial purposes is recognized as an essential part of the task of prohibiting its use for beverage purposes. To that end, inter alia, the commissioner was authorized to provide regulations (title 2, § 1[7], being Comp. St. Ann. Supp. 1923, § 10138½), and to issue permits (sections 4, 5, 6, 9 [sections 10138½b, 10138½bb, 10138½c, 10138½dd]), with bonds to insure compliance with the terms of the permits.

Section 9 provides:

"If at any time there shall be filed with the commissioner a complaint under oath setting forth facts showing, or if the commissioner has reason to believe, that any person who has a permit is not in good faith conforming to the provisions of this act, or has violated the laws of any state relating to intoxicating liquor, the commissioner or his agent shall immediately issue an order citing such person to appear before him," etc.

[5] For present purposes, the significant language is that proceedings for revoking permits must be on the issue that the permittee is "not in good faith conforming to the provisions of this act. * * *" The words "not in good faith" obviously, by fair implication, mean that if a permittee has, acting in good faith but erroneously, failed to conform, the permit should not, for that reason, be revoked.

The plaintiff's permits involved the use of denatured alcohol, which is not, or at any rate is not supposed to be, usable for beverage purposes; and also alcohol (or "grain alcohol") which is commonly used for beverage purposes.

In article 114 of "Regulations No. 61 Relative to Production, etc., of Industrial Alcohol and Denatured Alcohol," is a provision for a bond to be given by the manufacturer, conditioned in general terms for faithful performance of the obligations of the permit for the use of specially denatured alcohol.

Compare, also, Regulations No. 60, § 322, which provides that bonds given for permits to use alcohol "shall be conditioned upon the

payment of 25 per cent. of the penal sum thereof as liquidated damages for any breach thereof, together with the payment, in addition thereto, of all taxes, assessments and penalties payable by the permittee under the National Prohibition Act," etc. The bonds put before the court do not seem to contain this provision for liquidated damages. Obviously interesting questions as to the rule of damages might be raised. No question has been mooted in' this case as to the government's remedy by action on the bonds. The provision for such bonds gives the government a species of double security; it emphasizes the view that forfeiture of permits should not be enforced if a less drastic remedy is contemplated by the law. Section 29 of title 2 of the Act (Comp. St. Ann. Supp. 1923, § 10138½p) also provides criminal penalties for violating the provisions of any permit, and for subsequent offenses both fines and imprisonment.

Article 116 deals with manufacturers' records and reports, of their use of denatured alcohol, and is as follows:

"Each manufacturer using specially denatured alcohol shall, on or before the 10th day of each month, file with the collector of his district transcript of monthly report, Form 1482, in duplicate, covering his transactions for the preceding month. Such report must show all alcohol on hand, received, used, or recovered. Failure to file this report promptly as above provided will result in the revocation of the manufacturer's permit.

"On receipt of the monthly report from the manufacturer, the collector, before transmitting one copy of the same to the Commissioner of Internal Revenue, will carefully examine the same, and will see that all alcohol shown by shippers' memorandum slips, Form 1473, has been accounted for by the manufacturer."

An official from the prohibition office testifies that the petitioners have fully complied with all official requirements relative to the use of denatured alcohol.

"Regulations 60, Relative to Intoxicating Liquor," § 174, deals with the records and reports required of permittees authorized, as were the plaintiffs, to receive in excess of 100 gallons per quarter of grain alcohol. That section is as follows:

"Sec. 174. Permittees authorized to receive in excess of 100 proof gallons of alcohol or other intoxicating liquor per quarter for manufacturing purposes are required to keep the following records:

"1. Amount of alcohol or other intoxicating liquor received.

"2. Amount of alcohol or other intoxicatnig liquor on hand at all times.

"3. Name of products in which alcohol or other intoxicating liquor is used.

"4. Number of gallons, or amount however expressed, of each product manufactured.

"Where permittees keep such commercial records as will contain the above information and are willing at all times during regular business hours to open such records to the inspection of prohibition officers, such records shall be accepted in lieu of similar records on official forms and no other records shall be required. It shall be the duty of directors to submit to the prohibition commissioner the names of all persons who keep such commercial records and who indicate a willingness to open them to official inspection. Should any permittee fail to keep records as above indicated that fact 'should be reported to the prohibition commissioner."

No breach of this section has by the government been pleaded; and of course no evidence was offered or admitted to show failure to conform to the requirements of this section.

It is difficult to deduce the attitude of the prohibition officials from the wordy and ambiguous answer, and from their testimony at the trial. Perhaps it is a fair inference that they are under the erroneous view that manufacturers, having permits to use industrial and other alcohol as an ingredient of their manufacturing process, hold their economic life at the will of the inspectors and other officials of the prohibition bureau. It is contended, in a rather loose and general way, that such manufacturers "must be at all times prepared to show the prohibition inspectors that they are acting in good faith."

No such doctrine can be sustained by the court. We have not yet abandoned the theory that we live under "a government of laws and not of men." Manufacturers have a right to use alcohol—under permits, issued as a necessary regulation of nonbeverage use —ancillary to the prohibition of the use of alcohol for beverage purposes. Permittees do not hold their permits at the mere whim or will of prohibition officials. To hold otherwise would be to put into the hands of individuals, who happen for the moment to be commissioners or inspectors, a power of economic life and death over a considerable number of innocuous or useful industries. Proceedings for revocation of these permits are highly penal in their nature and result. They are so in the case at bar; it appears

that the plaintiffs cannot carry on their perfumery business without obtaining a supply of alcohol. It follows, to repeat the ruling in the O'Sullivan Case, supra, that all derelictions relied upon by the government must be pleaded, and that the facts must be "determined by the court * * * as they would be determined in any ordinary equity case." 290 F. 847.

These proceedings are analogous to proceedings penalizing real estate owners found guilty of permitting their tenants to maintain liquor nuisances. Compare United States v. Schwartz (D. C.) 1 F.(2d) 718; Chase v. Revere House, 232 Mass. 88, 122 N. E. 162.

In section 9 of title 2 of the act (Comp. St. Ann. Supp. 1923, § 10138½dd) it is provided that on the revocation of a permit "no permit shall be granted to such person within one year thereafter." This is plainly a penalty, just as the padlock provision for one year in section 22 (section 10138½k) is a penalty.

Turning again to the pleadings in this case, the gist of the original answer was that the plaintiffs had not "acted in good faith in the conduct of their business." The court required amendment, in the nature of specifications. Thereupon, the prohibition officials drafted and filed an amendment containing twelve paragraphs. Most of these paragraphs the plaintiffs sought to have struck out, as setting out no legal cause for revocation. It is unnecessary to deal in detail with that motion. It is enough now to say that under paragraph 1 it is alleged that on or about November 1, 1922, the permittees diverted to beverage use two barrels of denatured alcohol. Apart from the fact that that transaction was not sought to be availed of by the government until some two years after it discovered it, on all the evidence I find it unsustained.

[6] At most, the evidence might warrant a finding that some employee of the plaintiffs failed to comply with the regulations for removing the labels on two barrels, which had contained denatured alcohol, bought and used by plaintiffs in their perfumery business. The plaintiffs testify that their instructions and general practice were to have the marks and serial numbers obliterated as soon as the barrels were emptied. The barrels in question, after being emptied, were sold to a local dealer. Perhaps there was failure on the part of some employee of the plaintiffs to conform to their instructions in that regard. Such failure (if it occurred),

not in bad faith, is, as matter of law, no adequate basis for the revocation of a permit.

It is unnecessary to review the other eleven paragraphs of this amendment to the answer. They are either bad as matter of law or unsustained as matter of fact.

On the entire record before this court, the plaintiffs are clearly entitled to permits, for the use of alcohol to carry on, in lawful fashion, their business of manufacturing perfumes and toilet articles.

Decree for the plaintiffs.