**SMITH et al. v. FOSTER, Federal Prohibition Administrator, et al.**

(District Court, S. D. New York. February 27, 1926.)

1. **Intoxicating liquors** ⊗⟹72—Court may review refusal of permit to deal in denatured alcohol (National Prohibition Act, tit. 2, §§ 4–6 [Comp. St. §§ 10138½b, 10138½bb, 10138½c]; Revenue Act June 7, 1906, amended by Act March 2, 1907 [Comp. St. §§ 6132–6136]).

Under National Prohibition Act, tit. 2, §§ 4–6 (Comp. St. §§ 10138½b, 10138½bb, 10138½c), federal court has jurisdiction to review refusal of Commissioner of Internal Revenue for permit to deal in denatured alcohol, despite requirement for permit in Revenue Act June 7, 1906, amended by Act March 2, 1907 (Comp. St. §§ 6132–6136).

2. **Intoxicating liquors** ⊗⟹70.

Refusal of permit to deal in denatured alcohol is not an act purely administrative, and when questions are seriously controverted opportunity to be heard should be granted under National Prohibition Act, tit. 2, § 6 (Comp. St. § 10138½c).

3. **Intoxicating liquors** ⊗⟹70.

Refusal of application for permit to deal in denatured alcohol under National Prohibition Act, tit. 2, § 4 (Comp. St. § 10138½b), without a hearing, *held* unlawful.

4. **Intoxicating liquors** ⊗⟹70.

Question whether application for permit to deal in denatured alcohol was excessive in amount *held* one on which applicants were entitled to be heard before refusal of permit.

5. **Intoxicating liquors** ⊗⟹75(8).

Under National Prohibition Act, tit. 2, § 6 (Comp. St. § 10138½c), District Court, in reversing decision of Commissioner refusing permit to deal in denatured alcohol, may grant relief required to protect against further abuse of administrative authority.

6. **Intoxicating liquors** ⊗⟹75(8).

Where the Commissioner has improperly denied a hearing upon application for permit to deal in denatured alcohol, and has refused to issue such permit, the District Court will not, in proceedings to review his refusal, undertake a trial of the issues de novo or decide in the first instance, the propriety of granting or refusing the permit, but will require the reinstatement of the application and the granting of a proper hearing thereon, and will retain jurisdiction of the suit to review the Commissioner's decision after such hearing has been had.

In Equity. Suit by William W. Smith and another, copartners doing business under the firm and style name of W. W. Smith & Co., against John A. Foster, Federal Prohibition Administrator for the state of New York, and as successor of Frank Putney, Federal Prohibition Director and Acting Federal Prohibition Administrator for the state of Connecticut, and another, to review a decision refusing an application for a permit to deal in denatured alcohol. Decision reversed, with directions.

Lewis Landes, of New York City, for plaintiffs.

Emory R. Buckner, U. S. Atty., of New York City (C. D. Williams, Asst. U. S. Atty., of New York City), for defendants.

THACHER, District Judge. The application for a permit under sections 4 and 6 of title 2 of the National Prohibition Act (41 Stat. 309 [Comp. St. §§ 10138½b, 10138½c]), was filed with the collector of internal revenue in Hartford, Conn., in July, 1925. The bond required by the regulations was filed at or about the same time, and the application appears to comply with the regulations of the department. Before making application for the permit, the applicants leased for a term of one year from August 1, 1925, premises suitable for the storage of denatured alcohol in Waterbury, Conn. Not having been advised of any action taken by the department, counsel for the applicants on September 3, 1925, wrote to the Federal Prohibition Director having the matter in charge in part as follows:

"If the application is refused, it is requested that reasons for the refusal be given. If the application has not been acted upon, and if there is any possible consideration on your part to disapprove this application, before the same is done, I request that my clients be given an opportunity to appear before you for a hearing."

At the time this letter was received no action had been taken on the application. The request for a hearing was, however, ignored, and on October 14, 1925, the application for a permit was refused, of which fact the applicants were advised without any statement as to the grounds of the refusal. From the records of the department introduced upon the trial, it appears that the grounds of refusal were that the application was considered excessive in amount, that no evidence was offered as to a market probably available for the quantities of alcohol desired, and that "the personnel of the company is not such as warrants the confidence of the department."

[1] In behalf of the defendants it is claimed that the court has no jurisdiction to review the refusal to grant a permit to deal in denatured alcohol, because it is said the provision of section 6, title 2, of the Act (Comp. St. § 10138½c) providing, "In the event of the refusal by the Commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity in the manner provided in section 5 hereof," has no application to the refusal of applications for denatured alcohol permits. Manufacturers and dealers in denatured alcohol are required to secure permits to manufacture their denatured product, and to purchase its intoxicating ingredients, section 4, title 2 of the National Prohibition Act (41 Stat. 309 [Comp. St. § 10138½b]). Section 6, read in connection with section 5 of title 2 of the Prohibition Act (Comp. St. § 10138½bb), provides for review by appropriate proceedings in a court of equity of the refusal of the Commissioner to grant any application for a permit.

The contention that section 6 has no application to the refusal of denatured alcohol permits, because prior to the date when title 2 went into effect permits to deal in denatured alcohol were required under the Revenue Act of June 7, 1906 (chapter 3047, 34 Stat. 217), amended by the Act of March 2, 1907 (chapter 2571, 34 Stat. 1250), being Comp. St. §§ 6132–6136, and the regulations of the Internal Revenue Department thereunder (Regulation No. 30, revised July 15, 1907, and supplement thereto of June 30, 1908), is sufficiently answered by the express provision of section 6, which appears in a later statute and is plainly applicable to the refusal of any permit required by section 4 of title 2 of the National Prohibition Act. Jurisdiction to review the refusal or revocation of such permits has often been exercised under the provisions of the National Prohibition Act. Ma-King Products Co. v. Blair (C. C. A.) 3 F.(2d) 936; McGill v. Mellon (D. C.) 5 F.(2d) 262; Gautieri v. Sheldon (D. C.) 7 F.(2d) 408. And many other cases may be cited as instances of the exercise of this jurisdiction. The objection that the court has no jurisdiction must therefore be overruled.

[2, 3] The application was refused because the acts of the general manager of the corporation applying for the permit in connection with his prior service as a prohibition agent were such as "not to warrant the confidence of the department." Notwithstanding the duty imposed upon the Commissioner and his subordinates to fairly find the facts and to base their findings upon the evidence, the request for a hearing was ignored, and upon a finding of lack of confidence based only upon ex parte investigation the permit was refused without explanation. The proceeding suggests the well-known jingle: "I do not like thee, Dr. Fell; the reason why I cannot tell." Such procedure seems to find justification in the regulation which provides that the prohibition administration "shall also make a careful investigation into the character of the person or persons applying for the permit, and, if for any reason he shall find that the person or persons are not entitled to the confidence of the Department, he should refuse to approve the application." Such procedure cannot, however, receive the sanction of law.

If the finding of lack of confidence implies dishonesty and lack of integrity, there can be no doubt of the duty to refuse the application. Ma-King Products Co. v. Blair (C. C. A.) 3 F.(2d) 936; Krasnow v. Canfield, 10 F.(2d) 1019 (C. C. A. 2d Circuit, Feb. 17, 1926). In the latter case, decided without opinion, the point was made that the Commissioner could not refuse an application for a permit because the applicant had violated the terms of a permit which had been revoked more than one year prior to the application. In affirming the judgment below, this point was overruled. From this ruling it follows that the Commissioner may refuse a permit, if satisfied that the applicant, because of past conduct, is not to be trusted to observe the law in the conduct of his business as a permittee. In principle, the decision is in approval of the decision of the Circuit Court of Appeals in the Third Circuit. Ma-King Products Co. v. Blair, supra.

But in every case, a finding of lack of confidence based upon prior acts of misconduct involves a finding of fact, and the exercise of the Commissioner's discretion based thereon. In this case the only support for a finding of misconduct is found in the report of an investigator, composed mainly of hearsay statements made by persons obviously hostile in their attitude toward the general manager, their hostility having been engendered by the fact that while in the government service he had procured the revocation of permits held by them.

It may be said that, in contrast to sections 5 and 9, section 6 of the National Prohibition Act (title 2), being Comp. St. §§ 10138½bb, 10138½c, 10138½dd, does not in terms provide for a hearing before granting or refusing a permit. But obviously there was a reason for this. The application upon its face may disclose circumstances justify-

ing its denial without a hearing. Facts conceded or not disputed in the correspondence between the Commissioner or his subordinates and the applicant may also justify a summary refusal of a permit. Uncontroverted facts may of course be accepted and acted upon without formal hearing, and where the conceded facts are sufficient to warrant refusal of the permit, certainly the applicant cannot complain if a hearing be not granted. Hence it would have been uselessly burdensome had the statute required a hearing upon every application. From its failure to do so it is to be plainly inferred that Congress intended that such hearings should only be had when required in the proper and lawful exercise of judicial discretion.

If the refusal of a permit were intended by the statute to be regarded as a matter purely administrative in character, no notice or opportunity to be heard would be necessary. People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894 But it is clear from the provisions for review that the Commissioner is to reach a decision which in its nature can be judicially reviewed, and which is to be based upon findings involving conclusions of fact as well as of law. Gautieri v. Sheldon (D. C.) 7 F.(2d) 408; Vollmer Beverage Co. v. Blair (D. C.) 2 F.(2d) 469. From these provisions it plainly appears that the refusal of a permit is not an act purely administrative in character, and that where questions are seriously controverted an opportunity to be heard should be granted. Gautieri v. Sheldon, supra; Fred Feil Brewing Co. v. Blair (D. C.) 2 F.(2d) 881. The injustice of proceeding upon hearsay reports and without a hearing in this case was demonstrated upon the trial, not only by testimony in denial of the charges of misconduct, but by the unusual character of the testimony adduced in support thereof. The refusal of the application without a hearing was unlawful, and the Commissioner's decision must therefore be reversed.

[4] What has been said applies with equal force to the conclusions of the Commissioner or his subordinates that the application was excessive in amount, and that no proof had been furnished of the probable requirements of the applicants' business. Clearly these were questions upon which the applicants were entitled to be heard before their application was summarily denied.

[5] The plaintiffs having been deprived of the right to a fair and impartial hearing by the arbitrary action of the Commissioner and his subordinates, there can be no doubt that this court in the exercise of its broad equitable powers may afford whatever relief may be required to adequately protect the plaintiffs against further abuse of administrative authority. Shreveport Drug Co. v. Jackson (D. C.) 2 F.(2d) 64. The propriety of the relief, however, depends very largely upon the nature and purpose of this proceeding. If upon the issues raised by the pleadings the court within the intendment of the statute is not only to review the action and findings of the Commissioner or his subordinates, but is to determine upon evidence adduced at the trial, and not even considered by the Commissioner, the propriety of issuing a permit which the Commissioner has refused to issue, then it would be appropriate for the court to determine this question upon the testimony which was taken at the trial, but not heard by the Commissioner, and upon its conclusions of fact deduced therefrom to enter final decree directing the issuance or refusal of a permit. If, on the other hand, it was the purpose of the statute that the Commissioner in the exercise of a discretion judicial in character should determine the question as to the propriety of the issuance of a permit subject to review in the courts, the propriety of the determination of this question by the court in a case where there has been no adequate consideration thereof by the Commissioner seems to me doubtful, even if it be assumed that the court has power under such circumstances to decide the question.

It will be helpful, therefore, to consider the nature of the proceedings in equity contemplated by the statute for a review of the Commissioner's decisions. In O'Sullivan v. Potter (D. C.) 290 F. 844, and McGill v. Mellon (D. C.) 5 F.(2d) 263, a proceeding to review the revocation of a permit was said by Judge Anderson to be "for most practical purposes a trial de novo." In Schnitzler v. Yellowley (D. C.) 290 F. 849, Judge Campbell, citing the O'Sullivan Case, said: "This is a trial de novo, and not merely a review of the Commissioner's decision, where no testimony can be received, other than the record of the hearing before the Commissioner." Judge Inch, in Hoell v. Mellon (D. C.) 4 F.(2d) 859, following Judge Campbell's decision, said: "Accordingly, while I agree that it is a trial de novo, it seems to me that this action is one in the nature of a bill of review," and further "that the purpose is to allow the decision to be reviewed within the limits ordinarily allowed in a bill of review. These are to correct errors apparent on the face of the record, and for newly discovered evidence after or for fraud in procuring the decision.' Montgomery's Manual of Federal

Procedure, § 1180. It would also seem it was intended that on the facts before the Commissioner a different conclusion might be reached."

While Judge Inch's analogy to a bill of review is suggestive, his concluding statement shows that the remedy for erroneous action by the Commissioner is not to be confined within the narrow limits of a bill of review. The statute in terms requires the court to review the decision of the Commissioner, and to affirm, modify, or reverse the finding of the Commissioner as the facts and the law may warrant. Errors of law are to be corrected, whether appearing on the face of the record or not. Findings of fact are to be reviewed and revised if the court upon consideration of the findings of the Commissioner reaches contrary conclusions. On the other hand, it is quite apparent that the Act does not contemplate a new trial in every case. The controlling language which defines the right to review is found in section 5, which by adoption in section 6 applies to this proceeding. "The manufacturer may by appropriate proceeding in a court of equity have the action of the Commissioner reviewed, and the court may affirm, modify, or reverse the finding of the Commissioner as the facts and the law of the case may warrant."

The function of the court is then to review "the action of the Commissioner" and to deal with "the finding of the Commissioner" as the facts and the law of the case may require. To "review" the Commissioner's "action" implies consideration, first, of the evidence or want of it upon which he reached his conclusions of fact; and, second, of the lawfulness of his order in the light of the facts established by the evidence before him. If the court undertakes to try the case over again upon new evidence not before the Commissioner, it does not review the action of the Commissioner in any proper sense. Such a trial does not result in the affirmance, modification, or reversal of the Commissioner's finding. It substitutes the action of the court for the action of the Commissioner, and results in new conclusions of law and of fact reached by the court upon evidence not considered by the Commissioner. In O'Sullivan v. Potter, supra, the precise ruling was that, in an action to review the decision of the Commissioner revoking a permit under section 9, the government in support of the Commissioner's action may plead and prove derelictions other than those considered by the Commissioner, in order to show that the permittee is not entitled to the relief demanded, even if the Commissioner's decision upon the record before him was wrong.

To this extent a trial de novo may be admissible, since it must always be open to the defendants in an action in equity to plead and prove facts which will defeat the plaintiffs' right to the relief demanded. In McGill v. Mellon, supra, there was a decree for the plaintiff because of the defendant's failure to allege and prove any derelictions justifying a revocation of the permit. It does not appear from the opinion whether or not the evidence taken before the Commissioner was reviewed by the court. If because of the lack of power to compel the attendance of witnesses and the production of documents before the Commissioner a fair hearing cannot be had, no doubt the court upon proper showing may through its processes compel the production of evidence thus unavailable before the Commissioner in order to supplement the record upon which he acted. Shreveport Drug Co v. Jackson (D. C.) 2 F.(2d) 64. Nothing short of this would afford the full protection which was apparently intended to be conferred by the statute.

But in the absence of some such necessity I cannot believe that the court should undertake to decide in the first instance the propriety of granting or refusing a permit. In the Shreveport Case, Judge Dawkins said, in speaking of the revocation of the permit: "If it had been intended that the question should be decided primarily by the court, it seems that the law would have required that the proceeding to revoke be brought there where all the processes and machinery of the courts could be utilized to that end. This it did not do, but granted merely to the permittee the right to have the ruling of the commissioner reviewed under the equity powers of the courts."

[6] From what has been said, the appropriate relief in this case seems clear. The Commissioner having denied the applicants a hearing, there is no record before the court such as the statute contemplates as a basis for the Commissioner's ruling which is to be reviewed, or the ruling of the court upon the review thereof. The Commissioner's position will therefore be reversed, with directions to reinstate the plaintiffs' application upon the refiling of a proper bond, and to promptly thereafter grant the plaintiffs a hearing upon all objections which may be made to the issuance of a permit. This hearing should be held without delay, and the order may so provide. Furthermore, in order that the applicants may not be prejudiced by further delay in procuring a review of any decision of

the Commissioner upon their application, jurisdiction of the suit will be retained and the Commissioner will be directed to file within 30 days (unless such period be extended by order of this court) his decision, with a statement of the grounds thereof, together with the evidence in support thereof. If the permit applied for is refused, the court will upon motion review the decision and render such final decree as the law and the facts may warrant.

NOTE.—Upon motion subsequently made to review the action of the Commissioner in refusing a permit after rehearing, the action of the Commissioner was affirmed, and the complaint dismissed.