07-1313-pr
Jones v. West

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

- - - - - -

August Term, 2008

(Argued: December 1, 2008        Decided: February 4, 2009)

Docket No. 07-1313-pr

_____

WENDYLL JONES,

Petitioner-Appellant,

-v.-

CALVIN WEST,[*]

Respondent-Appellee.

_____

Before:    McLAUGHLIN, PARKER, Circuit Judges, and KOELTL, District
           Judge.[1]

_____

Appeal from a judgment of the United States District Court for the Western District of New York (Bianchini, Magistrate Judge) denying Wendyll Jones's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner argues that the New York state court unreasonably applied Batson v. Kentucky, 476 U.S. 79 (1986), in concluding that Jones had failed to establish a

---

[*] We retain in the caption the name of the original custodian of Wendyll Jones, Calvin West, the Superintendent of the Elmira Correctional Facility. Should the parties desire that the caption reflect his current custodian, they may file a motion requesting such a change, supported by documentation identifying the current custodian.

[1] The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

prima facie case of discrimination with respect to the prosecutor's strike of a black prospective juror.

REVERSED AND REMANDED.

ANNETTE GIFFORD (J. NELSON THOMAS, on the brief), Dolin, Thomas & Solomon LLP, Rochester, New York, for Petitioner-Appellant.

KELLY WOLFORD, Of Counsel (WENDY LEHMANN, Of Counsel, on the brief), Monroe County District Attorney's Office, Rochester, New York, for Respondent-Appellee.

**KOELTL, District Judge:**

The petitioner, Wendyll Jones ("Jones"), appeals from the judgment of the United States District Court for the Western District of New York (Bianchini, Magistrate Judge), entered February 16, 2007, denying his petition for a writ of habeas corpus. Jones, who is black, was convicted in July 1998 on four counts of robbery in the second degree after a jury trial in the New York State Supreme Court, Monroe County, located in Rochester. In 2003, after exhausting his state court remedies, Jones filed a petition for habeas corpus against the respondent, Calvin West, the Superintendent of the Elmira Correctional Facility where the petitioner was incarcerated at that time. The district court denied the petition but granted a certificate of appealability on the sole question of whether the state courts erred in concluding that Jones had failed to establish a prima facie case of discrimination under Batson v. Kentucky, 476 U.S. 79 (1986), with

2

respect to the prosecutor's peremptory strike of a black prospective juror. We conclude that the state courts unreasonably applied Batson and that the petition for habeas corpus relief should be granted.

**BACKGROUND**

The state court before which Jones was tried employed a modified jury box system for selecting the jury. Under that system, a panel of twenty-one potential jurors was placed in the jury box, given questionnaires, and interviewed by the court. The parties were then given an opportunity to conduct fifteen minutes of voir dire with the panel, after which the court considered challenges for cause. The parties then exercised their peremptory strikes in a first round with the first twelve members of the venire, followed by successive rounds with the number of prospective jurors needed to complete a jury of twelve. If a jury was not selected from the first panel, a second panel of twenty-one was placed in the box. Each party had a total fifteen peremptory challenges to exercise across all panels.

Because almost all of the peremptory challenges were exercised off the record, the record in Jones's case does not reflect the race of many of the venire members who were struck by each party. However, the Batson challenges raised by defense counsel were made on the record, and the facts relating to those challenges are clear from the record.

3

The jury was selected after two panels. In the first panel, three members of the panel were struck for cause, two of whom were black. Of the remaining eighteen members of the venire, five were black. These were Ms. Jefferson, Ms. Peters, Mr. Barry, Ms. Hannah, and Ms. Benbow. The issue on this appeal is whether the state court unreasonably applied Batson when it found that Jones had not established a prima facie case of discrimination with respect to the prosecutor's strike of Ms. Peters.

During the first round of peremptories in the first panel, defense counsel raised his first Batson challenge with respect to Ms. Peters, who had been in seat number ten. The court turned to the prosecutor, who responded that Ms. Jefferson, a black woman, had been seated as the foreperson of the jury. The court appeared to accept this explanation, noting: "It appears that we do have one or more minority members on the jury, on the sworn jury."

During the second round of strikes, the defense raised a second Batson challenge: "[The prosecutor's] selections in respect to removing, in particular, Mr. Barry, who is number 15, and Ms. Hannah, who is number 18, I would point out to the Court and ask the Court to revisit the earlier Batson decision that now, but [for] Mrs. Jefferson, all the black potential jurors have been

4

removed from the panel, three of them by [the prosecutor] for peremptory challenges."[2]

The court again turned to the prosecutor for a response. The prosecutor pointed out for a second time that the foreperson of the jury, Ms. Jefferson, was black. With respect to his strike against Mr. Barry, he explained: "Mr. Barry is of the same general age as Mr. Jones, can relate as to that respect to Mr. Jones. When questioning him, Mr. Barry did not appear to be looking -- or looking in other directions." He also explained that he struck Ms. Hannah because she had both a son and a nephew who had legal problems.

Defense counsel argued that the prosecutor's proffered reasons for the strikes against Mr. Barry and Ms. Hannah were pretextual and that the prosecutor had offered no explanation for the peremptory strike of Ms. Benbow. Regarding Mr. Barry, defense counsel argued:

> Judge, if I may, the first issue regarding Mr. Barry is pretextual, in my opinion. His age has nothing to do with his ability to deliberate. We have members of variant age who have children, they have indicated, of the same age as my client. Mr. Barry did not respond frequently to any individual questioning as based upon my observations of the

[2] The prosecutor had actually exercised four peremptory challenges against black potential jurors, which included Ms. Peters, Mr. Barry, Ms. Hannah, and Ms. Benbow. Two black potential jurors had also been struck for cause, one by the prosecutor, and the other by defense counsel. It is not clear whether defense counsel was referring to the current round of strikes when he referred to three black potential jurors having been struck by the prosecutor, or whether he was mistaken. However, he later included Ms. Benbow and Ms. Peters in the same Batson challenge, indicating that he was aware of all four peremptory challenges and that he brought all four to the court's attention.

5

jury. There were a number of individuals who, at some point, either became bored with my questions, with [the prosecutor's] questions, and although they looked away, I'm sure they weren't bored with the Court's questions, so the mere manner, his physical appearance is not sufficient, in my opinion to support that contention. Mr. Barry is being removed, quite obviously, because he is of the same race as my client.

Defense counsel then continued, objecting to the prosecutor's strikes of Ms. Hannah and Ms. Benbow. Finally, defense counsel requested the court to reconsider its earlier ruling with respect to Ms. Peters. Defense counsel elaborated:

I would indicate to the Court that Miss Peters has none of these characteristics to which [the prosecutor] has related. She is a retired employee of General Motors, she is involved, and she, at my recollection, had -- no particular inquiry was made of her regarding any circumstances. She has two children whose ages were not indicated and there was no inquiry of the circumstances regarding those children. And, in point of fact, she distinguishes herself as a member of the jury, quite frankly, and did so in all of her physical demeanor in front of the Court, so I would ask the Court to, first of all, grant my application regarding the current Batson challenge and revisit the application regarding Miss Peters.

The court responded:

The Court denies the application to revisit the challenge to Ms. Peters. Regarding the three peremptory challenges executed during this second round of challenges, peremptory challenges, I'm going to disallow the challenge to Mr. Barry. There has not been a satisfactory neutral explanation for that challenge. I shall permit the peremptory challenges as to the other two jurors, Ms. Benbow . . . [and Ms. Hannah].

Mr. Barry was the only juror to be sworn from the second round of strikes, bringing the total number of jurors at that point to eight. A second panel of twenty-one potential jurors was then placed in the jury box. The prosecutor struck the first

6

black member of the second panel to come up for consideration, Ms. Thompson, and defense counsel raised a third Batson challenge. Defense counsel stated: "[M]y position is Mrs. Thompson is the next available black female that we get on the list and we have this recurrent issue arising every time we come to the next available black candidate." The prosecutor explained that he had struck Ms. Thompson because she had a brother who had been convicted in the last year, which the court accepted as a satisfactory race-neutral explanation. The defense raised its fourth and last Batson challenge when the next black member of the venire, Ms. Seawright, came up for consideration and was then struck by the prosecutor. Defense counsel argued: "And we are at the next black potential juror and we now have this same issue, Judge. My application continues and if this is not a pattern, nothing is." The court, however, accepted the prosecutor's explanation that Ms. Seawright's nephew had been convicted of a drug charge a year before. The parties then completed jury selection and chose two alternates. Ms. Jefferson and Mr. Barry were the only two members of the jury, including the two alternates, who were black.

At the conclusion of the trial, the jury returned a verdict finding the petitioner guilty of four counts of robbery in the second degree. On July 2, 1998, the petitioner was sentenced as a

7

second felony offender to concurrent terms of fifteen years in prison. His earliest release date is February 28, 2010.

The petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department. In a memorandum opinion, the Appellate Division affirmed the conviction, finding in relevant part that the trial court had properly determined that the defendant failed to meet his burden of presenting a prima facie case of discrimination. People v. Jones, 738 N.Y.S.2d 260, 260 (App. Div. 2001). On May 14, 2002, the petitioner's application for leave to appeal to the Court of Appeals was denied. People v. Jones, 772 N.E.2d 614, 614 (N.Y. 2002). On March 11, 2003, the petitioner timely filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition, Jones v. West, 473 F. Supp. 2d 390 (W.D.N.Y. 2007), and the petitioner timely appealed. We now reverse.

**DISCUSSION**

**I.**

We review a district court's denial of a petition for a writ of habeas corpus de novo. See Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus for a claim that has previously

8

been adjudicated on the merits by a state court only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision involves an "unreasonable application" of clearly established federal law as determined by the Supreme Court when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief." Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). That increment, however, "need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks omitted).

**II.**

In Batson, the Supreme Court held that racial discrimination in jury selection in state courts violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution. 476 U.S. at 85-87. Under Batson, a claim of racial discrimination in jury selection is evaluated using a three-step process:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.

Johnson v. California, 545 U.S. 162, 168 (2005) (internal quotations, citations, and alteration omitted). The parties do not dispute that the state court never required the prosecutor to provide a race-neutral explanation for striking Ms. Peters. The issue in this case, therefore, is whether Jones met the first step of the Batson inquiry so that the trial court should have proceeded to the second step of the Batson inquiry and required the prosecutor to state a non-discriminatory reason for his strike of Ms. Peters.

As we noted in Sorto, the Supreme Court has indicated that "[t]he first step of the *Batson* analysis, requiring the showing of a *prima facie* case, is not meant to be onerous." Sorto, 497 F.3d at 170 (citing Johnson, 545 U.S. at 170). A defendant need only

10

produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson, 545 U.S. at 170. In deciding whether the defendant has demonstrated a prima facie case of discrimination, the trial court should take into account "all relevant circumstances." Batson, 476 U.S. at 96. In Batson, the Supreme Court provided two examples of what "circumstances" might establish a prima face case of discrimination: "[A] 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Id. at 97.

**III.**

When Jones raised his first Batson challenge against the prosecutor's strike of Ms. Peters, he failed to make out a prima facie case of discrimination. At that point, the prosecution had used a peremptory challenge against only one of the two black members of the venire that had come up for consideration in the first round, Ms. Jefferson and Ms. Peters, and neither the pattern of strikes nor anything in the prosecutor's recorded statements provided any basis for a prima facie case of discrimination. See United States v. Stavroulakis, 952 F.2d 686, 696 (2d Cir. 1992).

11

However, the record before the trial court was very different when Jones raised his second Batson challenge to the prosecutor's peremptory strike of Ms. Peters. At that point, the prosecutor had struck four out of the only five black venire members in the first panel. Of those four, Ms. Peters was the only subject of a peremptory strike for whom the prosecutor did not provide a race-neutral reason. Most significantly, in response to the prosecutor's stated reason for using a peremptory strike against Mr. Barry, the state court rejected that reason as pretextual. At that point, the trial court had concluded that the prosecutor was not only capable of racial discrimination in the jury selection process, but had also provided an unsatisfactory pretextual reason for a peremptory strike. Despite the significant pattern of strikes and the finding that the prosecutor had provided a pretextual reason for another peremptory challenge, the trial court did not ask for any explanation of the prosecutor's reason for striking Ms. Peters. In light of these facts, we conclude that the Appellate Division's finding that Jones had not made out a prima facie case of discrimination at the time of his second Batson challenge was an unreasonable application of Batson.

The respondent contends that it is impossible for this Court to conclude that the state court unreasonably applied Batson because the record is too poorly developed to determine whether Jones had established a prima facie case of discrimination with

12

respect to Ms. Peters.  Without information about the racial make-up of the entire venire, the demographics of Monroe County, and the races of the other persons who were the subject of the prosecutor's peremptory challenges, the respondent argues that it is impossible to perform the statistical analysis needed to support an inference of discrimination.  The respondent also argues that Jones's second Batson challenge was premature, and that the state court did not act unreasonably by waiting to see if a more discernable pattern of discrimination would emerge later in the jury selection process.  This is essentially an argument that Jones had not adduced sufficient evidence at the time of the second Batson challenge to raise an inference of discrimination.

The respondent's arguments, however, conflate the variety of patterns that can give rise to an inference of discrimination. Discriminatory purpose may be inferred when a party exercises a disproportionate share of its total peremptory strikes against members of a cognizable racial group compared to the percentage of that racial group in the venire.  See, e.g., Brown v. Alexander, 543 F.3d 94, 101 (2d Cir. 2008); Green v. Travis, 414 F.3d 288, 299 (2d Cir. 2005); Overton, 295 F.3d at 278 n.9; United States v. Alvarado, 923 F.2d 253, 255-56 (2d Cir. 1991).  This rate is sometimes referred to as the "challenge rate."

However, an intent to exclude can also be inferred when a party uses peremptory challenges to strike a disproportionate

13

number of members of a cognizable racial group from the venire. In such a case, the Batson challenge is based on the party's "exclusion rate." The distinction between the two types of challenges is an important one. Cases involving successful challenges to exclusion rates have typically included patterns in which members of the racial group are completely or almost completely excluded from participating on the jury. See, e.g., Johnson, 545 U.S. at 173 (prima facie case established where all three black prospective jurors removed from jury); Batson, 476 U.S. at 100 (prima facie case established where all four black prospective jurors removed from the jury); Harris v. Kuhlmann, 346 F.3d 330, 345-46 (2d Cir. 2003) (prima facie case established where prosecutor used peremptory strikes to exclude all five black potential jurors in venire); Tankleff v. Senkowski, 135 F.3d 235, 249 (2d Cir. 1998) ("[T]he fact that the government tried to strike the only three blacks who were on the panel constitutes a sufficiently dramatic pattern of actions to make out a prima facie case."); United States v. Stewart, 65 F.3d 918, 925 (11th Cir. 1995) (in hate crime case, prima facie case established where defendants struck three out of the four black venire members); see also United States v. Battle, 836 F.2d 1084, 1085-86 (8th Cir. 1987) (prima facie case established where "[t]he government exercised five of its six (83%) allowable peremptory challenges to strike five of the seven (71%) blacks from the jury panel").

14

When, on habeas review, a party argues that the state court unreasonably denied a Batson challenge based upon the challenge rate--that is, the percentage of a party's total strikes used against a cognizable racial group--the record should include, at a minimum, the number of peremptory challenges used against the racial group at issue, the number of peremptory challenges used in total, and the percentage of the venire that belongs to that racial group. Cf. Sorto, 497 F.3d at 171-72 (noting that when a Batson challenge depends on a pattern of strikes, a sufficient record would likely include, inter alia, the composition of the venire, the adversary's use of peremptory challenges, and the race of the potential jurors stricken). When the record lacks one of those facts, it is impossible for a reviewing court to conclude that the state court should have drawn an inference of discrimination. See id. at 173 (absent information about the composition of the venire, court on habeas review could not conclude whether challenge rate established a prima facie case of discrimination).

The district court computed the relevant challenge rate of the prosecutor's strikes against black potential jurors in Jones's case and found "a substantial statistical disparity" that would have satisfied Jones's burden of establishing a prima facie case

15

of discrimination.[3]  Jones, 473 F. Supp. 2d at 408.  Nevertheless, the district court found that Jones's failure to articulate the numerical basis for his challenge was fatal to his Batson claim. See id. at 409-10.

However, Jones's Batson challenge was not based upon a disproportionate challenge rate, but rather on a disproportionate exclusion rate.  Defense counsel argued to the trial court that the prosecutor had attempted to use peremptory challenges to exclude all but one of the black prospective jurors.

When the asserted prima facie case is based upon the use of strikes to exclude all or nearly all of the members of a particular racial group, the record need only include how many members of that group were in the venire, and how many of those were struck.  See Harris, 346 F.3d at 345 ("[W]here every black juror was subject to a peremptory strike, a 'pattern' plainly exists."); Tankleff, 135 F.3d at 249 (finding prima facie case based solely on the fact that the government tried to strike the only three black potential jurors); see also Johnson, 545 U.S. at 173 (finding prima facie case of discrimination where prosecutor had struck all three black prospective jurors without requiring analysis of other data).  Information about the races of the

_____

[3] The district court calculated that the minority challenge rate, which was 40%, was nearly twice the percentage of minorities in the venire, 21.4%.  Jones, 473 F. Supp. 2d at 408.  This calculation was based on the fact that over the entire jury selection process, the prosecutor used six of his available fifteen peremptory challenges to strike black potential jurors.

16

remaining members of the venire, beyond knowing that they do not belong to the racial group that is allegedly being targeted, is not necessary, nor is information about how the challenged party used its other peremptory strikes.

The respondent is therefore incorrect to argue that the record in Jones's case is deficient because it does not include the races of every venire member, the racial make-up of Monroe County,[4] or how the prosecutor's remaining peremptory strikes were used. While the record did lack this information, Jones's counsel recited on the record which of the venire members were black, and that the remaining members of the venire were white.[5] From this information, it is clear that there were seven black potential jurors in the first panel of the venire. Two of these were struck for cause. The prosecutor then used his peremptory challenges to attempt to strike four of the five remaining black members of the

[4] The minority percentage of the population of the area from which the venire is drawn can be used as a surrogate for the minority percentage of the venire when the record on direct appeal lacks the information about the actual minority percentage of the venire. See Alvarado, 923 F.2d at 255-56. This information is used in calculating the prosecutor's challenge rate. However, the use of this information is more dubious on a petition for habeas corpus where the issue is whether the state court unreasonably applied Batson, where it is unclear if the state court had this statistical information, and where the state court can determine the racial composition of the actual venire without turning to surrogate statistics. See Sorto, 497 F.3d at 172-73.

[5] During voir dire of the first panel, defense counsel stated for the record: "Mr. Barry, Ms. Peters, Miss Hannah, Mr. Jefferson, Mrs. Dixon, Mrs. Hayward. You're the black members of the proposed jury. At this point my client is black. The other representatives of the jury panel at this time are white." Defense counsel did not mention Ms. Benbow's name at that time, but he clearly identified Ms. Benbow as black when he raised his second Batson challenge. He stated: "Ms. Benbow is the other black female who was involved."

17

voir dire panel. It is beyond dispute that, where all members of a racial group are excluded from a jury, a pattern is obvious enough to draw an inference of discriminatory intent. See, e.g., Johnson, 545 U.S. at 173; Batson, 476 U.S. at 100; Harris, 346 F.3d at 345-46; Tankleff, 135 F.3d at 249. This Court has also stated that a party "may not avoid the *Batson* obligation to provide race-neutral explanations for what appears to be a statistically significant pattern of racial peremptory challenges simply by forgoing the opportunity to use *all* of his challenges against minorities." Harris, 346 F.3d at 346 (quoting Alvarado, 923 F.2d at 256). Where a party has used its strikes to exclude all or nearly all of several members of a racial group from serving on a jury, such a pattern may give rise to an inference of discrimination. See Batson, 476 U.S. at 93 ("[T]otal or seriously disproportionate exclusion of Negroes from jury venires . . . is itself such an unequal application of the law . . . as to show intentional discrimination." (quoting Washington v. Davis, 426 U.S. 229, 241, 242 (1976)) (internal quotation marks and citation omitted)).

It is unnecessary to decide whether a pattern of striking four out of five members of a single racial group would, on its own, establish a prima facie case of discrimination. In this case, in addition to the prosecutor's pattern of strikes, the state trial court also had the significant circumstance before it

18

that it had concluded that the prosecutor's statements concerning Mr. Barry were pretextual reasons for the peremptory strike. In addition to a pattern of strikes, the other example of circumstantial evidence that the Batson Court indicated could give rise to an inference of discrimination is "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges." Batson, 476 U.S. at 97. These circumstances were plainly sufficient to establish a prima facie case that required an explanation for why the prosecutor exercised a peremptory strike against Ms. Peters.

Here, defense counsel had argued that the prosecutor's stated reasons for striking Mr. Barry--that he was of the same age as the defendant and had been looking in other directions during voir dire--were pretexutal, and the state trial court agreed. However, a trial court is required under Batson to take into consideration "all relevant circumstances," and a pretextual statement made by a prosecutor in the course of jury selection is a highly relevant circumstance. The state court nevertheless rejected defense counsel's application to reconsider the Batson challenge with respect to Ms. Peters and did not require the prosecutor to give a race-neutral explanation for having struck her.

The district court held that Jones missed his opportunity to rely upon the disallowed challenge of Mr. Barry as circumstantial evidence of the prosecutor's improper motive in striking Ms.

Peters. Jones, 473 F. Supp. 2d at 410. The respondent also argues that defense counsel should have explicitly told the state trial court that it should have considered this circumstance in evaluating the peremptory challenge against Ms. Peters. However, in this case, defense counsel adequately brought its Batson challenge to the attention of the trial court and explained the basis for a prima facie case of discrimination. Defense counsel pointed to the statistics, and in the course of the second Batson challenge, asked the court to reconsider its rejection of the Batson challenge to Ms. Peters and also argued that the reasons given by the prosecutor for the additional peremptory challenges were pretextual. The finding that the trial court then made which found that the prosecutor had provided a pretextual excuse for the peremptory strike of Mr. Barry should have been taken into account by the trial court in connection with the strike of Ms. Peters which the trial court was being asked to reconsider in the very same set of challenges. It was not necessary for defense counsel to ask for reconsideration yet again based on the circumstances that were already before the trial court.

Taking into account both the prosecutor's pretextual justification for striking Mr. Barry and the prosecutor's use of strikes against four out of the five black members of the first venire, we conclude that Jones had established a prima facie case of discrimination at the time he raised his second Batson

20

challenge against the strike of Ms. Peters, and that the Appellate Division unreasonably applied Batson in finding that Jones had failed to do so.

Overton and Sorto are not to the contrary. Most importantly, these cases did not involve an explicit finding by the state court that the prosecutor had provided pretextual reasons for striking another juror in the same jury selection process. Moreover, both Overton and Sorto are principally about deficiencies in the record. In Overton, defense counsel raised a Batson challenge at the end of the second round of peremptory strikes based on the prosecutor's challenge rate against black prospective jurors. The defense claimed that, by a "rough count," the prosecutor had used seven of nine peremptory challenges against black prospective jurors.[6] Overton, 295 F.3d at 273. The prosecutor responded by pointing out that three of the eight jurors who had been seated at that point were black; however, there was no contemporaneous record made of the races of all of the prospective jurors. The state court denied the challenge. At the end of the third round, the state court identified on the record the racial backgrounds of the prospective jurors, but the defense did not renew its Batson challenge at any point after the record was made. This Court's holding in Overton, therefore, was that when the defendant raised

_____

[6] The prosecutor had actually exercised seven of ten of his peremptory challenges against black prospective jurors by the end of the second round. Overton, 295 F.3d at 273 n.4.

21

his Batson challenge, the facts that would have been necessary to raise an inference of discrimination had not yet been fully established.  Id. at 279-80.

In Sorto, the defense made two Batson challenges.  The first was raised after the prosecution used its first round challenges to strike three minority venire members, although one challenge was subsequently withdrawn.  The second was raised after the prosecution used a second round strike against another minority venire member.  The state court denied both challenges for lack of a prima facie case, and also gave the alternative explanation for its denial of the defendant's second challenge that the prosecutor had supplied, on its own volition, a non-pretextual and race-neutral justification for the strike.  At neither the time of the first strike nor the time of the second strike did the defense establish on the record the racial composition of the venire.  On habeas review, this Court held that the state court did not act unreasonably when it denied the first Batson challenge as premature.  Sorto, 497 F.3d at 171.  This Court denied habeas relief with respect to the second Batson challenge on the ground that the record did not contain "the baseline factual circumstances" necessary to find that the state court acted unreasonably.  Id. at 171-72.  The record did not contain clear information about the races of other venire members struck by the prosecution, or information about how many minority persons

22

remained on the venire after the challenged strikes, and this Court declined to conclude that the state court acted unreasonably on such an incomplete record. Id. at 172-74.

The record in this case does not suffer from the deficiencies of those in Overton and Sorto. Although the record does not disclose the specific races of the remaining persons on the first panel, it shows that they were not black. Therefore, when Jones raised his second Batson challenge, the record established that four of the five qualified black venire members had been struck by the prosecutor. Moreover, the trial court was presented with a record that the prosecutor was providing a pretextual excuse for striking another black potential juror, and the trial court agreed that the prosecutor had indeed provided a pretextual reason. There was thus more than a sufficient record for the trial court to conclude that defense counsel had established a prima facie case that required an explanation for the prosecutor's peremptory strike of Ms. Peters.

**IV.**

When a federal habeas court has concluded that the state court unreasonably applied Batson, there are several remedial options: 1) require the district court to "hold a reconstruction hearing and take evidence regarding the circumstances surrounding the prosecutor's use of the peremptory challenges . . . ; 2) return the case to the state trial court on a conditional writ of

23

habeas corpus so that the state court could conduct the inquiry on its own; or 3) order a new trial." Harris, 346 F.3d at 347 (internal quotations and citations omitted).

Over ten years have elapsed since Jones's trial, and he will be eligible for release in a little over a year. Jones argues that he should be granted a new trial because an accurate reconstruction of the prosecutor's reasons would now be impossible. However, the respondent has requested a reconstruction hearing and represented at oral argument that the court and the lawyers involved in the case are available. This Court has noted that "there are cases where the passage of time may impair a trial court's ability to make a reasoned determination of the prosecutor's state of mind when the jury was selected," in which a new trial must be held. Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992). Nevertheless, this Court has also recognized that the prosecutor should be allowed an opportunity to present its reasons for exercising the challenged strikes at a reconstruction hearing "if appropriate findings may conveniently be made." Id. (quoting Alvarado, 923 F.2d at 256).

We are concerned about the significant amount of time that has passed since Jones's trial, as well as the fact that he has already served almost the entirety of his sentence. These concerns can be satisfied with a prompt remand to the state court

24

with instructions to hold a reconstruction hearing within ninety days or grant Jones a new trial also within ninety days.

**CONCLUSION**

For the reasons explained above, we REVERSE the judgment of the district court and REMAND with instructions to conditionally grant the writ and order the respondent to release Jones unless the state court holds a reconstruction hearing within ninety days or, if it determines that such a hearing would not be possible, grant Jones a new trial within ninety days of the date of this decision.  The mandate shall issue forthwith.

25