(September 29, 2009)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCUS WILSON, Appellant. [886 NYS2d 17]—

Appeal from judgment, Supreme Court, New York County (Rena K. Uviller, J.), rendered January 31, 2007, convicting defendant, after a jury trial, of coercion in the first degree, and sentencing him, as a second felony offender, to a term of 3 to 6 years, held in abeyance and the matter remitted to Supreme Court for a *Batson* hearing for the People to articulate neutral explanations for the exercise of their peremptory challenges and for the court to determine whether the proffered reasons are pretextual.

The court erred in its determination that defense counsel failed to make a prima facie case of sexual discrimination in the prosecutor's exercise of peremptory challenges. In this case

against a defendant accused of physical and sexual abuse of his girlfriend, during the first round of challenges, the prosecution used five peremptory challenges all against men (including two African-Americans and one Hispanic male). Defense counsel accused the People of using their challenges discriminatorily when they challenged "all male[s]" and "[did] not "challenge[ ] a single female." We disagree with the court's finding that "no pattern [was] established . . . in any of these challenges." The People's use of their challenges constituted prima facie discrimination, and the trial court erred in failing to require the prosecutor to give neutral explanations for those challenges (*People v Luciano,* 44 AD3d 123 [2007], *affd on other grounds* 10 NY3d 499 [2008] [defendant's exercise of peremptory challenges against all five female panelists constituted a discriminatory pattern based on gender]; *see People v Harris,* 283 AD2d 520 [2001] [the People "established a prima facie case of discrimination" when "defense counsel peremptorily challenged four of the five remaining white venirepersons in the second round of jury selection"]; *People v Vega,* 198 AD2d 56 [1993], *lv denied* 82 NY2d 932 [1994] [the People "established a prima facie case of purposeful racial discrimination in the use of peremptory challenges when they established that the defense used 7 of its 8 challenges to exclude all but one of the white persons on the panel of 16"]; *see also People v Rosado,* 45 AD3d 508 [2007] [numerical argument sufficient to raise inference of discrimination although not accompanied by other evidence]; *cf. People v Guardino,* 62 AD3d 544, 545 [2009] ["While a purely numerical argument may give rise to a prima facie showing of discrimination," the numerical argument that four of six black female prospective jurors had been stricken by the prosecutor did not warrant the finding of a prima facie case]). Accordingly, we remand this matter for a *Batson* hearing for the People to articulate neutral explanations for the exercise of their peremptory challenges and for the court to determine whether the proffered reasons are pretextual. Concur—Moskowitz, Renwick and Freedman, JJ.

Gonzalez, P.J., and Friedman, J., dissent in a memorandum by Gonzalez, P.J., as follows: I would conclude that the court properly denied defendant's *Batson* challenge. It is unclear from both the minutes of the voir dire and defendant's appellate brief exactly what cognizable group or groups were the subject of defendant's *Batson* application. In any event, with regard to any type of unlawful discrimination in the exercise of peremptory challenges by the prosecutor, the defense did not meet its initial burden of establishing an exercise of peremptory challenges in a manner suggesting either gender- or race-based

discrimination (*see Batson v Kentucky*, 476 US 79, 96-98 [1986]). In the first round of jury selection, 16 prospective jurors were empaneled. Two were disqualified by the court. Nine of the remaining 14 individuals were men, and five were women. The record does not indicate the racial composition of the venire. Each side had a total of 15 peremptory challenges, and the People used five in the first round, striking five of the nine men. Two of these men were African-American; one was Hispanic. The defense also used five challenges in the first round, striking three men and two women of unknown race.

After the People exercised their last peremptory strike, defense counsel stated:

"Your honor, I'm going to raise a *Batson* challenge at this point in time. Prosecution has challenged Prospective Juror Number One . . . male African American.

"[T]he fourth challenge was for a Hispanic male . . . And now they are challenging another African American male.

"In other words your Honor, the pattern that I see is the prosecution is discriminatorily using their challenges to exclude men of a minority class, both Hispanic and . . . African American."

Defense counsel also faulted the prosecution for striking a disproportionate number of men, concluding that "they are excluding all the men and we're getting left with an all female jury." The court noted that the People had not challenged two minority males who were in the venire. Defense counsel then stated that the People's challenges were "all male. They haven't challenged a single female. They're all male. And 50 percent are directed against minority males. My client is African American male. We would like a fair jury." Finding no discernable pattern of discrimination, the court denied defendant's *Batson* claim, over a defense objection.

The court then empaneled the second venire, and the prosecutor exercised a peremptory challenge against an African-American woman. Defense counsel stated:

"Your honor, I raise the *Batson* issue again. Another African American, this time female, has been challenged for no apparent neutral reason.

"THE COURT: Last time it was men.

"[DEFENSE COUNSEL]: Minority men. This time, minority female. Used their challenge in a racial manner to exclude—

"THE COURT: I don't believe there is a pattern of racial challenge. Denied."

Defense counsel did not object.

In total, the People used seven peremptory challenges. Five of the seven challenges were against men. Two of these men were African-American and one was Hispanic. One of the two women challenged by the People was African-American. The two panels consisted of 13 men and 14 women. The racial composition of the panels is unclear. The record of the voir dire does not contain any statements indicating bias or prejudice.

In *Batson v Kentucky*, the United States Supreme Court held that the equal protection clause prohibits a prosecutor from exercising peremptory challenges to strike prospective jurors on the basis of race (476 US 79, 89 [1986]). The Supreme Court has extended the *Batson* rationale to gender (*J. E. B. v Alabama ex rel. T. B.*, 511 US 127, 130-131 [1994]). In New York, the Court of Appeals has broadly stated that "[e]limination of a potential juror because of generalizations based on race, gender or other status that implicates equal protection concerns is an abuse of peremptory strikes" (*People v Allen*, 86 NY2d 101, 108 [1995]).

*Batson* sets forth a three-step process for determining whether the People's peremptory challenges have been exercised in a discriminatory manner (*see Allen*, 86 NY2d at 104). First, the defense "must allege sufficient facts to raise an inference that the prosecution has exercised peremptory challenges for discriminatory purposes" (*id.*). Our Court of Appeals has further instructed that, the defense must "articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed" (*see People v Childress*, 81 NY2d 263, 268 [1993]). If the defendant makes a prima facie showing, the burden shifts to the prosecution to articulate a neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the proffered reasons are pretextual (*see Allen* at 104).

There are no "fixed rules" for determining whether the proponent of a *Batson* claim has made a prima facie showing (*People v Bolling*, 79 NY2d 317, 323-324 [1992]). However, in *Batson*, the Supreme Court provided two examples of circumstances that may satisfy the challenger's initial burden: (1) a pattern of strikes against certain jurors included in the particular venire and (2) questions and statements during voir dire examination which support or refute an inference of discriminatory purpose (*see* 476 US at 97). The Supreme Court has given trial judges broad discretion to act as primary gatekeepers for *Batson* challenges (*see id*; *see also People v Hache*, 174 AD2d 309, 310 [1991], *lv denied* 78 NY2d 923 [1991]).

Defendant contends that the inference of discrimination can be drawn from the pattern of the prosecutor's strikes. It is his claim that the record indicates a discriminatory bias against any or all of three possible groups: (1) men; (2) minority men; and (3) minorities. In *Jones v West* (555 F3d 90 [2d Cir 2009]), the Second Circuit addressed the issue of when the composition of stricken jurors alone can establish or refute a "pattern" of discrimination under *Batson*. The court discussed two measurements that may be made. The first, referred to as the "exclusion rate," measures whether "members of the racial group are completely or almost completely excluded from participating on the jury" (*id.* at 98; *see e.g. Johnson v California*, 545 US 162 [2005] [prima facie *Batson* claim established where all three black prospective jurors removed from the jury]). The second, referred to as the "challenge rate" measures whether "a party exercise[d] a disproportionate share of its total peremptory strikes against members of a cognizable racial group compared to the percentage of that racial group in the venire" (*Jones*, 555 F3d at 98). To determine the "challenge rate," the record must indicate the number of peremptory challenges used against the group at issue, the total number of peremptory challenges exercised, and the percentage of the venire that belongs to the group (*id.*). The proponent of the *Batson* challenge also bears the burden of developing the factual and legal grounds to support the claim (*Overton v Newton*, 295 F3d 270, 279 [2d Cir 2002]). In the absence of a record containing sufficient facts to draw a statistical conclusion, a reviewing court's failure to draw an inference of discrimination cannot be deemed a violation of *Batson* requirements (*People v Pratt*, 291 AD2d 210 [2002], *lv denied* 98 NY2d 654 [2002]).

Here, after the first round of jury selection, defense counsel asserted that the prosecutor was improperly using his challenges to exclude minority men and men in general. The majority accepts this claim, asserting that the fact that five men were challenged by the prosecutor in the first round of jury selection was alone sufficient to establish a prima facie case of discrimination. However, this conclusion fails to consider the composition of the venire. Certainly, if the first 16-person venire contained only five men, and all were stricken an inference of discrimination would be raised. By contrast, since the venire was approximately two-thirds men, the fact that five were stricken has no legal significance. Moreover, in the second round of the voir dire, the defense challenged the prosecutor's exercise of a peremptory challenge to strike an African-American woman. This challenge undercut the prior claim that the prosecution was attempting to eliminate all the men from the jury.

The first venire was composed of approximately 64% men. As the People struck approximately 50% of them from the venire, and there was no other evidence of bias, the court had no reason to draw an inference of gender-based discrimination based upon the exclusion rate or the challenge rate (*see People v Brown*, 97 NY2d 500, 508 [2002] [People's removal of seven African-Americans through exercise of eight peremptory challenges was inadequate, without more, to meet first step under *Batson* where there were 15 African-Americans in the venire]; *People v Williams*, 253 AD2d 901 [1998], *lv denied* 92 NY2d 986 [1998]; *see also People v Childress*, 81 NY2d at 267).

With respect to defendant's race-based challenge, the defense did not make a record of the total number of "minority" men, whether black or Hispanic, in the jury pool, and the racial composition of the venire is not otherwise indicated. However, the record does indicate that there were at least two minority members on the jury. Thus, it is impossible to determine whether the prosecutor disproportionately struck minority males in the first round or whether it disproportionately struck minorities in the totality of the jury selection process. Accordingly, the Court also properly denied defendant's race-based *Batson* challenge.