10-2346-pr
Watson v. Ricks

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of June, two thousand eleven.

PRESENT:   CHESTER J. STRAUB,
           REENA RAGGI,
           RICHARD C. WESLEY,
                *Circuit Judges.*

------------------------------------------------------------------------
MARK WATSON, TN KEMAR PHILLIPS,
                *Petitioner-Appellant,*

            v.                                      No. 10-2346-pr

SUPERINTENDENT THOMAS RICKS, UPSTATE
CORRECTIONAL FACILITY, ATTORNEY GENERAL
ELIOT SPITZER, NEW YORK STATE,
                *Respondents-Appellees.*

------------------------------------------------------------------------
APPEARING FOR APPELLANT:        MICHAEL C. TAGLIERI, The Legal Aid Society, New York, New York.

APPEARING FOR APPELLEE:         NOAH J. CHAMOY (Joseph N. Ferdenzi, *on the brief*), Assistant District Attorneys, *for* Robert T. Johnson, Bronx County District Attorney, Bronx New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (William H. Pauley, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's June 2, 2010 order is AFFIRMED.

Petitioner Mark Watson appeals from the denial of his petition for a writ of habeas corpus, see 28 U.S.C. § 2254, which challenged his New York conviction for rape, sodomy, and burglary on the ground that the prosecution's use of peremptory challenges to dismiss five jurors of West Indian descent violated the Fourteenth Amendment's guarantee of equal protection as construed by the Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986). See Watson v. Ricks, No. 05 Civ. 7288, 2010 WL 2346614, at *6 (S.D.N.Y. June 2, 2010). The district court denied relief only after reviewing the record of a reconstruction hearing conducted pursuant to an earlier order of the district court. See Watson v. Ricks, No. 05 Civ. 7288, 2008 WL 490610 (S.D.N.Y. Feb. 22, 2008). We review the denial of a habeas corpus petition de novo. See Jones v. West, 555 F.3d 90, 95 (2d Cir. 2009). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

Objections to a peremptory challenge under Batson are subject to a familiar three-step review by the trial court:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

2

Johnson v. California, 545 U.S. 162, 168 (2005) (internal quotation marks, citations, and alterations omitted). On direct appellate review of a Batson ruling, we generally afford "great deference" to a district court's determination of discriminatory intent, see, e.g., Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000), because that question of fact often turns on the court's evaluation of witness credibility, see Hernandez v. New York, 500 U.S. 352, 364 (1991); Batson v. Kentucky, 476 U.S. at 98 n.21. When a state trial court's Batson ruling is challenged under § 2254, our review is further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which we will not identify constitutional error unless the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." Rice v. Collins, 546 U.S. 333, 341 (2006). Watson cannot satisfy this demanding standard simply by pointing to the fact that, at the same time the prosecutor denied discriminating against jurors of West Indian descent, she questioned whether West Indian descent qualified as an ethnic class triggering Batson review. Where, as in this case, a reconstruction hearing was conducted, petitioner must show that the record as a whole compelled the conclusion required by Rice.

On appeal, Watson faults the trial court's Batson rulings at the reconstruction hearing with respect to two of the five challenged jurors of West Indian descent. Accordingly, we need not discuss the other three. See LoSacco v. City of Middletown, 71 F.3d 88, 92-93 (2d Cir. 1995) (holding that when litigant raises issue before district court but does not raise it on appeal, it is deemed abandoned).

3

1.    <u>Newman</u>

At the reconstruction hearing, the prosecutor testified that she struck prospective juror Newman based on Newman's volunteered comments that a relative with a prior arrest "had been in the wrong place at the wrong time." Reconstruction Hr'g Tr. at 27. The prosecutor reported concern that this indicated a predisposition to view the defendant as wrongly accused. Finding the rationale nondiscriminatory and crediting it being held in good faith, the trial court determined that Watson had not demonstrated that it was a pretext for illegal discrimination, a determination that the district court concluded was not unreasonable. <u>See</u> <u>Watson v. Ricks</u>, 2010 WL 2346614, at *6.

In urging otherwise, Watson advances two arguments. First, he argues that the prosecutor's justification relies upon a mischaracterization of Newman's <u>voir dire</u> testimony. <u>See</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 244 (2005). Specifically, Watson contends that Newman did not profess <u>his</u> belief that his relative was "in the wrong place at the wrong time," but stated only that police officers told him that his relative was "in the wrong place at the wrong time." The point merits little discussion. As Watson acknowledged at the reconstruction hearing, he offered a "possible reading" of the juror's statement in contrast to the prosecutor's. Reconstruction Hr'g Tr. at 51. This does not compel the conclusion that the trial court had "no possible alternative" but to accept Watson's interpretation, much less to dismiss the prosecutor's professed concern as a pretext for discrimination. <u>Rice v. Collins</u>, 546 U.S. at 341.

Second, Watson contends that the prosecutor misrepresented the <u>voir dire</u> record in distinguishing Newman from prospective juror Rosa, whose friend was also accused of a

4

crime. Although the prosecutor testified that Rosa had reported not seeing his friend "in around five years," Reconstruction Hr'g Tr. at 57, Rosa stated that he had done so recently. Thus, Watson contends that the challenged Batson ruling as to Newman is based on a clear factual error. We are not persuaded. Notwithstanding Rosa's recent interaction with his friend, the five-year period without contact between the two permitted the prosecutor to conclude that the friend "is somebody that [Rosa] obviously is not involved in," id. at 67, thereby providing a non-discriminatory reason for drawing a distinction between Newman and Rosa. Rosa's recent encounter with his friend does not undermine the credibility of the prosecutor's main justification for excusing Newman – that Newman expressly empathized with his relative and offered his own judgment regarding the reason for his relative's arrest. Rosa, by contrast, expressed no opinion regarding the merits of his friend's arrest. In sum, even if "[r]easonable minds reviewing the record might disagree" about how to view these considerations in evaluating the prosecutor's proffered justification, "on habeas review that does not suffice to supersede the trial court's credibility determination" that the challenge to Newman was not based on discriminatory intent. Rice v. Collins, 546 U.S. at 341-42.

2.     Miller

At the reconstruction hearing, the prosecutor proffered several justifications for striking prospective juror Miller: (1) Miller knew an attorney from another country where laws would apply differently from in the United States; (2) Miller's work as a registered nurse might prompt her to substitute her own judgment for expert witnesses' regarding DNA evidence; and (3) Miller's recent civil jury service, and her description of that service, raised concern about her ability to serve on a criminal jury.

Watson concedes that "occupation-based peremptory challenge[s] are generally deemed non-pretextual," Appellant's Br. at 58, but contends that the occupation-based justification in this case could not reasonably be credited because it was preceded by a series of implausible justifications, see Miller-El v. Dretke, 545 U.S. at 246. We are not persuaded, however, that the trial court was compelled to conclude that the prosecutor's other proffered justifications were implausible. Insofar as Watson submits that Miller's relationship with corrections officials was not a plausible ground for striking her in light of similarly situated jurors, the point warrants no discussion because the prosecutor explicitly did not offer that reason as a justification. Watson submits that the prosecutor's concern about Miller's relationship with a foreign lawyer was "so lacking in reasoned analysis as to be virtually incoherent." Appellant's Br. at 56. The question for consideration at the reconstruction hearing was not whether the concern might have been assuaged, for example, by securing the juror's assurance not to speak with the lawyer or anyone else about the case. Rather, the question was whether the prosecutor genuinely maintained this nondiscriminatory concern or advanced it only as a pretext for discrimination. The record here did not foreclose the former finding or compel the latter. Finally, Watson suggests that professed concern about Miller's description of her civil jury service was implausible because the prosecutor failed to question Miller further about that service. This was an argument for the trial court to consider, but did not compel a finding of pretext. Much less was such a finding compelled by the total record.

3.     <u>Conclusion</u>

We have considered Watson's other arguments on appeal and conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court